(No. 12870.—Reversed and remanded.)

THE ILLINOIS STEEL COMPANY, Plaintiff in Error, *vs.* THE
INDUSTRIAL COMMISSION *et al.*—(GORDON A. RAMSAY,
Admr. Defendant in Error.)

*Opinion filed December 17, 1919.*

1. WORKMEN'S COMPENSATION—*order of probate court finding
that the claimant was wife of deceased employee is not admissible
against employer.* In a proceeding for compensation for the death
of an employee, where the issue is whether the claimant is the
widow of the deceased, an order of the probate court finding that
the deceased was under a legal obligation to support the claimant as
his wife and that she is the only person entitled to compensation is
not admissible against the employer and is not even *prima facie*
evidence that she is the widow of the deceased.

2. EVIDENCE—*for what purpose a judgment may be admitted
against one who was not a party to it.* A judgment may be offered
in evidence against one who was neither a party nor a privy to the
suit in which it was rendered for the purpose of establishing the
fact of its own rendition and the legal consequences resulting from
that fact, but it is not admissible to establish the facts upon which
it has been rendered except against the parties to the suit or their
representatives.

3. JUDGMENTS AND DECREES—*judgment cannot affect one who is
not a party unless it is of a public nature.* No one can be affected
by proceedings to which he is a stranger unless the judgment is
upon some subject of a public nature, as in the case of inquisitions
on behalf of the public, which are in the nature of proceedings
*in rem.*

4. HUSBAND AND WIFE—*what is necessary to prove common law
marriage in another State.* Where it is sought to prove a common
law marriage in another State by cohabitation which was illicit in
its inception, the party asserting the marriage has the burden of
proving affirmatively not only that the illegal relation has termi-
nated, but that it terminated by the parties entering into an af-
firmative agreement to become husband and wife.

WRIT OF ERROR to the Circuit Court of Cook county;
the Hon. OSCAR M. TORRISON, Judge, presiding.

KNAPP & CAMPBELL, (J. L. EARLYWINE, of counsel,)
for plaintiff in error.

A. L. WILLIAMS, (LAWRENCE HARMON, of counsel,) for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On October 26, 1917, Albert Kindler, who also went by the name of Albert Kendall, was killed by an accident arising out of and in the course of his employment by the plaintiff in error, the Illinois Steel Company. Gordon A. Ramsay, public administrator of Cook county, was appointed administrator of Kindler's estate and petitioned the Industrial Commission for compensation for his death in behalf of an applicant who claimed that she was the wife of Kindler whom he was under legal obligation to support. The arbitrator decided that the applicant was not the wife or widow of Kindler and denied compensation, but on a review by the Industrial Commission the commission found that the applicant was the wife of Kindler whom he was under obligation to support and awarded compensation. The record was removed to the circuit court of Cook county by writ of *certiorari,* and the court confirmed the decision of the commission and certified that the case was one proper to be reviewed by this court.

A transcript of an order of the probate court of Cook county was received in evidence on behalf of the applicant, in which the court found that the applicant, Martha J. Kindler, was the widow of Albert Kindler, deceased; that he was legally obligated to maintain and support her, and that she was the only person entitled to participate in the distribution of said estate under the Workmen's Compensation act. The question who was entitled to compensation under the Workmen's Compensation act was no concern of the probate court, and if it had been, the order was not admissible in evidence against the plaintiff in error. A judgment may be offered in evidence against one who was neither party nor privy to the suit in which it was rendered

for the purpose of establishing the fact of its own rendition and those legal consequences which would result from that fact, but there is a material difference between proving the existence of a record and using the record to prove matters of fact found by it. A judgment cannot be introduced in evidence to establish the facts upon which it has been rendered except against parties to the suit or their representatives, because no one can be affected by proceedings to which he is a stranger unless the judgment is upon some subject of a public nature, as in the case of inquisitions on behalf of the public, which are in the nature of proceedings *in rem.* (1 Greenleaf on Evidence, sec. 538; 2 Best on Evidence, 592; 10 R. C. L. 1116; *Corbley* v. *Wilson,* 71 Ill. 209; *American Woolen Co.* v. *Lesher,* 267 id. 11; *Nolan* v. *Barnes,* 268 id. 515.) The order of the probate court was not even *prima facie* evidence as against plaintiff in error that the applicant was the widow of Albert Kindler.

There was no material controversy as to the facts. Albert Kindler, a colored man residing in Atlanta, Georgia, was married in 1900 and lived in that city with his wife until 1907. In 1901 the applicant, Martha Jones, was a cook in a home in Atlanta and Kindler visited her there and an adulterous intercourse commenced and was maintained thereafter. She then had a daughter, Sylvia, about five years old, who always supposed that she was a child of Kindler until after she was married to Ralph John Fletcher, when she found that she was the child of another man. The relation between Kindler and Martha Jones continued at the house where she was cook for one year and thereafter at various places where she lived in Atlanta. In 1902 a child was born to her which died in infancy, and she claimed that Kindler was its father. In 1907 Kindler's wife left him and went to Chicago, and after that he lived with his sister, Tiny Chumm, until he went to Chicago, in May, 1917. He kept his trunk at Tiny Chumm's but had clothes at the home of Martha Jones, and sometimes, at

least, she cooked meals for him and washed his clothes. On December 7, 1908, Kindler's wife, Lonie, obtained a divorce from him in the superior court of Cook county and in 1909 she was married to Meredith. While they lived in Atlanta, Kindler gave money to Martha Jones to pay rent and expenses when she did not have a job. Carrie Branch, who lived across the street from Kindler and knew him during all the time he lived in Atlanta did not know Martha Jones, and John Parks, who knew Kindler twelve years in Atlanta, never knew of his being married to her. The applicant admitted that her relation with Kindler was illicit in its inception and continued frequently in Atlanta; that they did not live together as man and wife but he would come back and forth; that they never went through any marriage ceremony, and that she did not marry him because she was kind of slow and was afraid of the other woman and because she wanted to make sure that he was divorced. In 1905 the applicant introduced Kindler in Atlanta on the street as her husband, saying, "My husband, Mr. Kindler," but his wife had not then been divorced and the applicant was not and did not pretend to be his wife. After Kindler came to Chicago, in May, 1917, he lived with Jeff Ray and was employed by the plaintiff in error, and the applicant came to that place unexpectedly one evening after they had gone to bed. After that Kindler and the applicant moved to another place, because, as the applicant said, Jeff Ray did not want her there. There was one instance in Chicago when the applicant introduced Kindler, saying, "Meet my husband, Mr. Kindler," and a letter was introduced in evidence written by .Kindler, directed to Martha Kindler, Atlanta, Georgia, but the letter did not indicate that she was his wife or that there was any relation between them. After his death the applicant had her daughter send a telegram to Tiny Chumm, who lived in Atlanta, notifying her of the accident, and it was signed Martha Jones. She also had her daughter, Sylvia, send

a registered letter to Tiny Chumm, which was also signed Martha Jones. The letter was about insurance carried by Kindler, payable to Tiny Chumm, and the insurance was paid to the beneficiary. The applicant testified that Kindler said his wife was divorced and wanted her to marry him, but kept on putting it off and putting it off until finally he died.

The only claim of the applicant was that there was a common law marriage between herself and Albert Kindler, and such a marriage is valid in Georgia. If the relation of husband and wife was created at all it was created in Georgia, for such a marriage was not valid in 1917 in this State. It was and is admitted that the relation between the parties was meretricious in the beginning and continued as such, with knowledge of the applicant that Kindler was married to another woman, at least up to the time of the divorce. Cohabitation illicit in its inception will be presumed to continue so, and the party asserting a marriage has the burden of proof to show affirmatively not only that the illegal relation has terminated, but that it terminated by the parties entering into an affirmative agreement to become husband and wife. (*Cook* v. *State of Georgia,* 11 Ga. 53; *Clark* v. *Cassidy,* 64 id. 622; *Smith* v. *Smith,* 84 id. 440; *Drawdy* v. *Hesters,* 130 id. 161; *Smith* v. *Reed,* 145 id. 724.) There was an utter failure to prove that the adulterous relation changed in character or that Martha Jones became the wife or is now the widow of Albert Kindler. Her own testimony that Kindler spoke once or twice about marriage but she was afraid of the other woman and he said she was divorced, and then he wanted her to marry him but kept putting it off and putting it off until finally he died, is conclusive that there was no marriage.

The judgment of the circuit court is reversed and the cause remanded, with directions to set aside the award of the commission.

*Reversed and remanded, with directions.*