HOLMES, EXRX., *v.* THE PERE MARQUETTE RD. CO.

(Decided February 8, 1927.)

*Mr. C. A. Thatcher* and *Mr. C. A. Meck,* for plaintiff in error.

*Messrs. Tyler, McMahon, Smith & Wilson,* for defendant in error.

WILLIAMS, J. Howard L. Holmes, a railway switchman employed in the yards of the Pere Marquette Railroad Company in the city of Toledo, sustained injuries on January 6, 1924, while in the performance of his duties as such switchman. He was, at the time, riding on the footboard of a switch engine when the footboard struck a pile of frozen cinders and the injuries resulted in his death. Lena Thompson Holmes was appointed executrix of the estate of the decedent and began an action for damages for wrongful death against the railroad company in the court of Common Pleas of Lucas county. In her petition she alleged, among other things, that she was his widow, that she had been dependent upon him for support, and that at the time of the injuries both the railroad company and the decedent were engaged in interstate commerce. This brought the case within the provisions of the Federal Employer's Liability Act (Title 45, Sections 51 to 59, U. S. Code; Comp. Stats., Sections 8657 to 8665), which provides that the liability of a common carrier by railroad for wrongful death shall be "for the benefit of the surviving widow or husband and children of such employees," and, if there are none, then certain other persons named therein may be the beneficiaries. Title 45, Section 51, U. S. Code. As the decedent left no children, the action was brought for

the benefit of the surviving widow. The court below directed a verdict in favor of the railroad company upon the ground that there was no proof tending to show that Lena Thompson Holmes was the surviving widow of the decedent. Judgment was entered on the verdict, and this proceedings in error is prosecuted to reverse that judgment.

The evidence discloses that Lena Thompson Holmes was married to the decedent and lived with him for a number of years. In 1921 she applied for a divorce, and in the month of July following a divorce was granted. There is evidence tending to show that subsequent to the time of the divorce the divorced parties made an ''agreement together'' that they would live just the same as they did before, that is, as man and wife, and that thereafter they cohabitated together as husband and wife, and were so treated and reputed to be such, in the community in which they lived and among those with whom they came in contact, and that these transactions took place in the state of Ohio.

It is thus apparent that if Lena Thompson Holmes was the surviving widow of the decedent, it was because she was his wife at the time of his death under and by virtue of a common-law marriage. Such a marriage is valid in Ohio. *Umbenhower* v. *Labus,* 85 Ohio St., 238, 97 N. E., 832. It is therefore necessary to inquire what would constitute a common-law marriage. Where an agreement of marriage *in præsenti* is entered into by persons competent to contract, and is accompanied and followed by cohabitation as husband and wife, and the contracting parties are treated as such and reputed to be such in the community in which they live, and in the circle

in which they move, it constitutes a valid marriage at common law in Ohio, and the contracting parties are husband and wife as fully and to the same extent as if there had been a statutory and ceremonial marriage. *Umbenhower* v. *Labus, supra.*

The bill of exceptions shows the following in the redirect examination of Lena Thompson Holmes:

"Q. Then after this decree was entered in July of 1921, what agreement, if any, did you have with Mr. Holmes about living together? (Objection as irrelevant, incompetent, and immaterial.)

"By the Court: Any agreement between him and her?

"By Mr. Meck: Yes.

"By the Court: I sustain the objection. It undertakes to introduce evidence of conversation between the parties. Personal communications between husband and wife are incompetent.

"By Mr. Meck: As I understand that statute to which your honor refers, his only privilege, as far as they are concerned—They can tell it, but a third person—

"By the Court: I sustain the objection. Take an exception.

"By Mr. Meck: Exception, and expect the evidence to show that Mrs. Holmes and her husband had an agreement that they would again resume the relations of husband and wife. * * *

"By Mr. Meck: Did you again take up relations of husband and wife? A. We made the agreement together that we would live just the same as we did before, as man and wife."

It is evident that the only legitimate evidence as to what constituted the agreement of marriage and

whether it was made *per verba de præsenti* would be the language or conversation out of which the agreement arose, and it was error for the court to refuse to permit evidence of conversations between the parties upon the ground that it would constitute personal communications between husband and wife, and, as counsel for the executrix excepted and stated that he expected the evidence would show such an agreement, the question was properly saved. Such conversation would not be incompetent as a communication between husband and wife for the reason that they had been previously divorced, and no common-law marriage would exist until after the agreement was made and was followed consistently by the indicia of the marriage relation. The mere fact that there may have been an agreement to live together as man and wife would not be sufficient even if followed by such indicia, unless made *per verba de præsenti*, that is, by words of the present tense. If such agreement was made, but by words of the future tense, there could be no common-law marriage. The court erred in not permitting the conversation between Lena Thompson Holmes and the decedent to show whether or not the agreement was or was not made by words in the present tense. *Umbenhower* v. *Labus, supra.* There is, therefore, error in the record prejudicial to the plaintiff in error in that the court excluded such conversation between Lena Thompson Holmes and the decedent, and in directing a verdict without admitting such evidence.

The court refused to permit any evidence to be adduced by the plaintiff as to the manner in which the injuries were sustained. We are therefore un-

able to review the record for the purpose of determining whether or not it appears therefrom as a matter of law that there was no liability on the part of the railroad company.

For the reasons indicated, the judgment will be reversed and the cause remanded for a new trial.

*Judgment reversed and cause remanded.*

Culbert and Richards, JJ., concur.

Richards, J. I concur in the judgment of reversal, but in addition to the grounds stated in the opinion I think it might well be based upon the principle that evidence was received by the trial court tending to show a common-law marriage, and, as the evidence tended to show a common-law marriage, the existence of such marriage became a question of fact and should have been submitted to the jury.

It appears from the testimony of the plaintiff that after the divorce she never changed her name, and that the plaintiff and decedent thereafter lived together continuously as husband and wife. Other testimony introduced tends to show that they continued to bear the reputation in the community of being husband and wife and commonly recognized in the community as husband and wife.

It is true that the plaintiff was not permitted to answer the question, "What agreement, if any, did you have with Mr. Holmes about living together?" But she testified later, without objection:

"We made the agreement together that we would live just the same as we did before, as man and wife."

The trial judge directed the verdict upon the theory that there could not be a common-law marriage within the purview of the federal act under which this suit is brought. In view of the above, I think the judgment of reversal should be based on the additional ground that there was evidence tending to show a common-law marriage; and that issue should have been submitted to the jury.