Michael E. White, Plaintiff in Error, v. Central Trust Company of Illinois, Consolidated with Greenebaum Sons Bank & Trust Company, Defendant in Error.

Gen. No. 34,201.

Heard in the second division of this court for the first district at the April term, 1930. Opinion filed October 14, 1930.

BARRETT, BARRETT & WERMUTH, for plaintiff in error.

FISHER, BOYDEN, BELL, BOYD & MARSHALL, for defendant in error; THOMAS L. MARSHALL and DAVID A. WATTS, of counsel.

MR. JUSTICE BARNES delivered the opinion of the court.

The judgment under review was entered against the plaintiff to the suit for want of prosecution after his motion to strike defendant's amended affidavit of merits was denied. The sole question presented is the sufficiency of the defense set up in said affidavit.

The declaration consisted of the common counts, to which was attached a statement of the claim and an amended affidavit of claim. The defense consisted of the plea of general issue supported by the said amended affidavit of merits.

The nature of plaintiff's claim, as set forth in his affidavit, is for the sum of $752,633.84, with interest, alleged proceeds from a foreclosure sale of certain premises under a trust deed to Greenebaum Sons Bank & Trust Company, a corporation, as trustee (to which defendant in error, Central Trust Company of Illinois, has become successor in trust), for the benefit and use of White, the owner of all the bonds secured by said deed.

Plaintiff's affidavit of merits sets forth the decree with the usual findings and orders of such a decree for sale of the premises in default of payment, at public vendue "for cash in hand," etc., by the master in chancery, with usual provisions for delivery of the certificate of sale and disposition of the proceeds to the trustee for the benefit of said White.

The affidavit then sets out that the sale was made to one Charles A. Pfingsten (not a party to this suit) for the sum of $757,088.07 (a sum less than the aggregate indebtedness), and that the master's certificate of sale was issued to him, and a duplicate thereof recorded in the office of the recorder of deeds, which recited that in pursuance of the decree the master duly advertised and

sold the premises "for cash," and that said Pfingsten made the highest bid therefor of said sum "in cash."

The affidavit further sets forth in substance the master's report of sale and distribution, reciting that he had paid out of the proceeds to said trustee, the sum of $752,633.84, for which the trustee receipted, and that after the usual notices the report was confirmed finding that the master had complied in all respects with the terms and conditions of the decree of sale. The affidavit then alleges that a demand was made upon the trustee to pay the last mentioned sum with interest from the date of sale and was refused.

The nature of the defense set up in the affidavit of merits is as follows:

That about March 1, 1926, plaintiff White had numerous conferences with the officers of Greenebaum Sons Bank & Trust Company, and its subsidiary, Greenebaum Sons Investment Company, and stated that he was desirous of obtaining title to the property conveyed by the trust deed and for that purpose desired to purchase all of the outstanding bonds secured by it; that in pursuance of said desire said bonds were purchased for him and he paid the purchase price therefor; that shortly thereafter he directed said Trust Company as trustee, because of existing defaults, to institute in his name for his benefit, foreclosure proceedings under said deed, and to use the amount found due under the decree of sale, so far as necessary, to purchase the property at the sale; that thereupon said Trust Company, pursuant to his directions and the terms of the deed, instituted and prosecuted the foreclosure to a sale as aforesaid, at which, pursuant to plaintiff's directions to bid in the property, it bid in the same in the name of said Pfingsten, and caused him immediately after receiving the master's certificate of

sale to indorse the same in blank and deposit it for plaintiff White in safe-keeping with said Investment Company, which immediately gave its receipt for the safe-keeping thereof and delivered the same to plaintiff, which he has ever since retained; that the bonds became merged in the decree of sale and were represented by the amount found due to the Trust Company as trustee, and pursuant to plaintiff's instruction to use said amount, as far as necessary, to purchase said property at the sale, it did, after paying the master's fees, etc., apply so much of the amount found due, as necessary to complete such purchase, "by receipting to said master as trustee for the amount thereof to be applied as a credit on the amount due under said decree, pursuant to the universal practice and custom followed in courts of chancery in this State in similar cases"; that no cash was received by the master or Trust Company on account of said sale (except that said company paid the master the expense of sale), and that the certificate so held by plaintiff represents and is the proceeds of the bid made at said sale.

It is first urged that said amended affidavit of merits does not comply with the requirements of section 55 of the Practice Act, Cahill's St. ch. 110, ¶ 55, because the affiant does not swear to the truth of the matters set forth as constituting a good defense. The contention is somewhat technical and goes to matter of form instead of to the merit of the affidavit, on which alone, as appears from the record, the motion to strike was argued and denied. Objection to a formal defect should be made specially and not by a general motion to strike. (*American Hard Rubber Co. v. Howe,* 280 Ill. 431.) While plaintiff cites *Hunter v. Troup,* 226 Ill. App. 343 (2d Appellate District), as sustaining his contention, the form of the affidavit in question has

frequently received approval in other Appellate Court cases. (*Wolfort v. David Lipsey Co.,* 189 Ill. App. 34; *F. N. Matthews & Co. v. Lilienthal,* 215 Ill. App. 160; *First Nat. Bank of Hayward, Wis. v. Gerry,* 195 Ill. App. 513; *Cooper v. Anderson,* 246 Ill. App. 1.) The affidavit is in the language of the statute, which prior to the amendment of 1907, adding the words, "and specifying the nature of the defense," was held sufficient. And in *Harrison v. Rosehill Cemetery Co.,* 291 Ill. 416, the court said that that being the only change in the statute, the construction to be given to it is the same, except that the defendant "must specify the nature of his defense," and that that requires stating "the kind or character of the defense," and necessarily a legal defense. Apparently the purpose of the amendment was to apprise the plaintiff of its nature that it might appear from the statement of it whether the defense so believed to be meritorious is in fact a legal defense, instead of leaving the defense undisclosed and resting solely on the defendant's sworn belief of its merits. The statute does not require that the defendant should specifically swear to the truth of the facts upon which the nature of the defense rests, although we think it may be said that the affidavit in such form fairly implies that they are true. If the legislature intended otherwise, direct and appropriate language to make such intent clear could, and probably would, have been employed. If, therefore, it can be said that the question of form has been preserved for review we think neither a proper construction of the statute nor that placed on it in previous practice and decisions supports plaintiff in error's contention.

The question, then, is, does the affidavit of merits state a legal defense?

The contention that it does not rests mainly on the theory of judicial estoppel. The argument in effect is that plaintiff's affidavit of claim sets up in substance a judicial record that imports verity and cannot be collaterally contradicted, varied or explained, stressing the facts that the master's report recites that the sale was "for cash," and the order confirming it was upon that theory.

The principles underlying the doctrine of judicial estoppel are not questioned, but their application to this record is. This is an action on the common counts for money had and received, not one on pleadings specially setting up a former adjudication, as is necessary to raise the issue of *res adjudicata*. (*Consolidated Coal Co. v. Peers,* 166 Ill. 361; *People v. Oakridge Cemetery Corp.,* 328 Ill. 53.) The nature of the defense stated in the affidavit of merits is that of an estoppel *in pais,* and could be availed of under the general issue. (*Arnold v. Hart,* 176 Ill. 442; *Guter v. Security Benefit Ass'n,* 335 Ill. 174, 180; Puterbaugh Common Law Pl. and Pr. [10th Ed.] p. 240.) There is no collateral attack here on the record of foreclosure. It is simply a question of whether the matters set up in the affidavit of defense are available as a legal defense to an action which purports to be for money (cash) had and received.

As ground for estoppel *in pais* it sets forth not only that the very course of procedure by which the property was bid in for the benefit of White, the owner of the entire bond issue, by using his claim thereunder in lieu of cash and handing the cash back—concededly a useless formality—was induced and directed by said White, and that defendant acted both as trustee under the deed and as his express agent to use his claim in that manner to secure title for him to the property, but

that he ratified and confirmed the same by accepting the certificate of sale as evidence of the title and fulfillment of the agency.

Even if there were a basis for the doctrine of judicial estoppel in the record in reciting that the sale was "for cash," plaintiff, by inducing the trustee to act for his benefit in such manner and by accepting as the result thereof the certificate of sale, is in no position to assert estoppel by the record simply because of such recital. As said in *Kamm v. Rees,* 177 Fed. 14 (C. C. A. 9), where one was held bound in a similar line of conduct, "he is himself estopped to allege estoppel." The principle is of ancient origin. (4 Comyn's Digest [4th Ed.] p. 84; Coke on Littleton, 352b; 2 Smith's Leading Cases [12th Ed.] pp. 772–3.) In the language of Coke, "estoppel against estoppel doth put the matter at large."

A somewhat analogous application of the doctrine may be found in *Chicago Title & Trust Co. v. Prendergast,* 335 Ill. 646, and *Duffner v. Bowyer,* 40 T. L. P. (K. B. Div.) 700. Other cases, not inapplicable, in which the law of estoppel *in pais* has been successfully invoked to prevent injustice might be cited, among them those referred to in the *Prendergast* case, and in *Reiss v. Hanchett,* 141 Ill. 419, 428.

We think, therefore, that upon the ancient principle stated, defendant was not precluded from setting up in explanation of the adverse recitals of the record relied upon by plaintiff, his instructions to the trustee as his agent and the latter's compliance therewith, whereby he acquired by the foreclosure proceedings precisely what through such instructions he set out to obtain.

But, as said in *Illinois Steel Co. v. Industrial Commission,* 290 Ill. 594, quoting from Greenleaf on Evidence, "there is a material difference between proving

the existence of the record and its tenor, and using the record as the medium of proof of the matters of fact recited in it." A judgment may be offered in evidence against one who was neither party nor privy to the suit in which it was rendered "for the purpose of establishing the fact of its own rendition and those legal consequences which would result from that fact," but it cannot be introduced in evidence to establish the facts upon which it has been rendered except against parties to the suit or their representatives or privies. (*Illinois Steel Co. v. Industrial Commission, supra;* 34 C. J. p. 95; 2 Freeman on Judgments [5th Ed.] Sec. 1040.) Strangers cannot be bound by nor take advantage of recitals in the record. (Black on Judgments, Sec. 600; Bigelow on Estoppel [6th Ed.] p. 36.) White was not a party to the foreclosure proceeding. For a former adjudication to be a bar there must be, as between the actions, an identity of parties, of subject matter and of cause of action. (*Hoffman v. Hoffman,* 330 Ill. 413, 416.) Such is not the case here.

Nor is the doctrine of estoppel by verdict available. To operate as such there must not only have been a finding of a specific fact in the former judgment or record material and controlling in that and the subsequent case but it must have been so in issue that it was necessarily determined by the court rendering the judgment interposed as a bar. (*People v. Chicago & Eastern Illinois Ry. Co.,* 336 Ill. 506, 511; *Hoffman* case, *supra.*) To be bound by a former judgment, the parties must not only have been adversary parties in the original action but there must have been an issue or controversy between them. (1 Freeman on Judgments [5th Ed.] sec. 422.) Not only were the parties here not adversaries in the foreclosure suit but the issue whether the trustee is liable to pay money to White

was not involved, adjudicated, nor raised in that suit. And as a privy, if so regarded, White was on the same side of the controversy in that suit as the trustee. There was no issue between them.

Nor was there an issue of payment of money referred to the master to be determined by him. True, he reported a sale "for cash" and his report was confirmed. But the confirmation of a master's report of sale, or for paid money, was held in *Cruger v. Daniel,* 16 S. C. Eq. 157, to be not a judicial act but an administrative order. It was said that the object of the confirmation order is not to determine the truth of the fact reported, but to approve of it, and to protect the master in what he has done, the court adding: "And if the fact be incorrectly reported, parties are not estopped to show the truth." The court cited *Messervey v. Barelli,* 2 Hill's Ch. (S. C.) 433, where it was said confirmation of the report of having paid the plaintiff in that case her share of the estate "was not the object." This theory of the ministerial character of the master's report of sale seems to have been applied in *Grubb v. Crane,* 4 Scam. 153, where a commissioner was appointed to sell lands in vacation in the event of nonpayment of money, and it was held his determination of the nonpayment was a ministerial act.

We think that defendant in error's point that there was no material issue in the confirmation proceedings as to the payment of cash or between the parties hereto as adversary to each other, is well taken, and as "the only parties concluded by a decree are adversary parties" (*Renfro v. Hanon,* 297 Ill. 353), defendant was not precluded from setting up the truth with respect to such payment, and it constituted a legal defense.

In short, plaintiff seeks to have defendant pay cash for what he has already received and retains as the

equivalent under his own express directions. He got what he bargained for, and should not now be permitted to claim something else.

It has frequently been held that where a person entitled to the proceeds of a judicial sale becomes a purchaser, his receipt to the agent of the court for the amount due him, less any expenses that must be paid in cash, is deemed the equivalent of cash and has been upheld by the courts as a proper medium of payment. (See 73 Am. & Eng. Ann. cases, p. 998, and cases there cited.) Among the cases there cited is *Kenley v. Bryan*, 110 Ill. 652, where on a sale of land of a decedent to pay debts the purchase by the widow paid for in part by her receipt to the administrator for her separate allowance owed to her by the estate, was claimed to be a fraud that justified setting aside the sale. The court said: "It is true, she did not count out the actual cash," but it held that her receipt operated to relieve the estate of so much debt, and was a full, fair and legal discharge of the estate of that amount of the indebtedness. In *Glemser v. Glemser*, 5 Ohio Dec. 267, it was said where a party interested in a particular proceeding, either personally or as trustee, "becomes a purchaser and is bound to pay over money, which under distribution and order of court would be received immediately by him as such trustee or in his individual capacity, that the law does not contemplate that he should actually pay over in cash the full amount," but that if he acknowledges receiving the amount either in his personal capacity or as trustee, the receipt given therefor "is the same thing as though he had actually paid the money in cash." Other cases cited are to the same effect treating receipts for the proceeds of a judicial sale to a purchaser who is entitled thereto, as cash. As said in *Blum v. Rogers*, 71

Tex. 668, 669, 9 S. W. 595: "To require actual money to be paid over that is to be returned at once is an idle ceremony."

Nor is there any sound reason for a different rule where a dummy is used as a bidder, as indicated in *Pearson v. Morrison,* 2 Serg. & Rawle, 20, and *Fishburne v. Smith,* 34 S. C. 330.

In *Reinhardt v. Seaman,* 208 Ill. 448, 454, it was said:

"The report made by the administrator that he had sold the premises for cash was not rendered fraudulent by the fact that he only received the receipt of the widow acknowledging payment of the award to her. The receipt discharged the indebtedness of the estate to the same extent that it could have been paid in money."

In *Koerner v. Gauss,* 57 Ill. App. 668, the decree provided for a sale for cash (p. 670). It was urged as error that complainant was allowed to purchase without paying in cash the amount bid. The court said the purpose of the proceeding was to pay the debt with the proceeds of the sale on the mortgaged premises and that purpose was effected by complainant taking the property at the price paid instead of money.

We think the affidavit of merits stated a legal defense.

*Affirmed.*

SCANLAN, P. J., and GRIDLEY, J., concur.