## LAWSON v. UNITED STATES.
## RETZ v. UNITED STATES.
Nos. 11, 12, Dockets 21980, 21981.

United States Court of Appeals
Second Circuit.

Argued Oct. 1, 1951.

Decided Nov. 5, 1951.

Myles J. Lane, U. S. Atty., New York City, Irving H. Saypol, U. S. Atty. for the Southern Dist. of New York, New York City, for appellant; Howard F. Fanning, Atty., Dept. of Justice, New York City, of counsel.

Gay & Behrens, New York City, for appellee Lawson and cross-appellant Retz; Edward J. Behrens, New York City, of counsel.

Before SWAN, Chief Judge, and CLARK and FRANK, Circuit Judges.

SWAN, Chief Judge.

This litigation resulted from a collision on the high seas on March 30, 1945 between two vessels owned by the United States. The collision caused the death of two seamen, whose administrators brought suits under the applicable federal statute, 46 U.S.C.A. § 761 et seq. The suits were consolidated for trial and an interlocutory decree was entered holding the United States liable and referring the matter to a commissioner for report as to the loss sustained by the persons for whose benefit the suits were brought. The final decree entered upon the commissioner's report awarded Lawson, as administrator of seaman Cardenas, $2,000 for the benefit of Paula Liendo and $13,250 for the benefit of Antonia Martinez, and awarded Retz as administrator of seaman Donald Retz, $2,500 for the benefit of Frederick Retz and nothing for the benefit of Mary Retz. The United States appealed from that part of the decree which made an award for the benefit of Antonia Martinez, and cross-assignments of error were filed by the two administrators.

The statute confers upon the personal representative of the decedent the right to recover from the wrong-doer damages "for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative."[1] By the present appeal the United States challenges only the award of $13,250 for the benefit of Antonia Martinez, the contention being that she was neither the "wife," nor a "dependent relative" of the deceased seaman within the intendment of the statute. Briefly, the relevant facts are as follows: Cardenas, a citizen of Cuba, married Paula Liendo on June 9, 1943 at New Orleans, Louisiana. Shortly thereafter he deserted her but the marriage was never dissolved by divorce or otherwise. On March 10, 1945 Cardenas went through a marriage ceremony in New York City with Antonia Martinez. In his affidavit for the license to marry he swore that he had not been married before. On March 21, 1945 he joined the ship on which he met his death. In the shipping articles he named Antonia as next of kin and he made an allotment of $100 to her. On the basis of the foregoing facts, the commissioner reported that Paula was the decedent's legal wife and Antonia was not entitled to any award. The district court sustained exceptions to the report in so far as it made no award for the benefit of Antonia.[2] By supplemental report the commissioner computed the award for her at $13,250 and this figure was embodied in the final decree.

In holding that Antonia, who innocently went through a marriage ceremony with Cardenas when he had a legal wife living and undivorced, was also a "wife" within the meaning of the statute, the district court relied upon this court's decision in Middleton v. Luckenbach S. S. Co.[3] It was there held that an illegitimate child could be considered a "child" and his mother a "parent" within the meaning of this statute. We think the implication of that case is adverse rather than favorable to Antonia's claim to be a "wife." In common parlance an illegitimate son or daughter is called the "child" of its mother and the mother the child's "parent." But the common meaning of "wife" is legal wife; and a bigamous marriage does not make the defrauded and innocent woman a "wife" in common parlance. The problem, of course, is to determine what meaning the legislators intended (or may be assumed to have intended) to ascribe to the word "wife." And we see nothing to suggest that they used the word in other than its normal meaning, or intended that a man could have two or more wives all recovering at once under this statute.[4] While the question under the Death on the High Seas Act appears to be one of first

1. 46 U.S.C.A. § 761.

2. Lawson v. United States, D.C., 88 F. Supp. 706.

3. 2 Cir., 70 F.2d 326, certiorari denied 293 U.S. 577, 55 S.Ct. 89, 79 L.Ed. 674.

4. Conceivably an exception may exist in the case of a citizen of a country where polygamy is a legally recognized institution.

impression, analogous decisions under similar state and federal statutes support the view above expressed.[5]

Nor can the "putative" wife come within the words "dependent relative." The right conferred is not for the benefit of all dependents but only for dependent relatives. The "putative" wife is not a "relative" in common parlance.[6]

By cross-assignment of errors, the administrator asks for an increase in the amounts awarded to Paula and Antonia. Under our decision the latter can get nothing. We see no ground for increasing the award to Paula. Indeed to give her $6,000 seems generous.[7] She had been deserted and had made no effort to find her husband and compel him to contribute to her support. The chance that he would have contributed substantial sums to her, if he had not been killed, seems remote.

The cross-assignments of Retz, administrator, assert that the awards to the fa-

5. The words "wife" or "widow" in federal statutes are almost universally interpreted to include only the legal wife. Decisions under National Service Life Insurance so holding are: Castor v. United States, 8 Cir., 174 F.2d 481; Schurink v. United States, 5 Cir., 177 F.2d 809; Gehm v. United States, D.C.N.Y., 83 F.Supp. 1003; Cavanaugh v. United States, D.C.Mo., 94 F.Supp. 776; under War Risk Insurance: United States v. Robinson, 5 Cir., 40 F.2d 14 (interpreting the word "spouse"); cf. Schiefer v. United States, D.C.N.Y., 52 F.2d 527 (where there is strong dicta that the putative wife was the legal wife—the case, however, contained an element of estoppel against the legal wife); under the Longshoremen's and Harbor Workers' Compensation Act 33 U.S.C.A. § 901 et seq.: Bolin v. Marshall, 9 Cir., 76 F.2d 668, certiorari denied, 296 U.S. 573, 56 S.Ct. 116, 80 L.Ed. 404; Green v. Crowell, 5 Cir., 69 F.2d 762, certiorari denied, 293 U.S. 554, 55 S.Ct. 88, 79 L.Ed. 656; under the Jones Act, 46 U.S.C.A. § 688, and the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq.: Beebe v. Moormack Gulf Lines, Inc., 5 Cir., 59 F.2d 319, certiorari denied, 287 U.S. 597, 53 S.Ct. 22, 77 L.Ed. 520 (this despite the fact that under Louisiana law the putative wife had certain rights against the man's estate); Meisenhelder v. Chicago & N. W. Ry. Co., 170 Minn. 317, 213 N.W. 32, 51 A.L.R. 1408; In re Tufts' Estate, 228 Wis. 221, 280 N.W. 309; Holmes v. Pere Marquette R. Co., 28 Ohio App. 297, 162 N.E. 675.

State Workmen's Compensation Acts usually permit only the legal wife to recover, Jones v. George R. Cooke Co., 250 Mich. 460, 231 N.W. 40; Illinois Steel Co. v. Industrial Commission, 290 Ill. 594, 125 N.E. 252; Hall v. Industrial Commission, 165 Wis. 364, 162 N.W. 312, L.R.A.1917D, 829, see Schneider, Workmen's Compensation Text, Vol. 9, § 1910 (1950). Putative wives have sometimes recovered under these acts because they came under another classification in the statute, usually "dependent." Compare Temescal Rock Co. v. Industrial Accident Commission, 180 Cal. 637, 182 P. 447, 13 A.L.R. 683; Summers v. Tennessee Eastman Corp., 169 Tenn. 335, 87 S.W.2d 1005; Kinnard v. Tennessee Chemical Co., 157 Tenn. 206, 7 S.W.2d 807 (Tenn.).

State wrongful death statutes also exclude putative wifes from the category of "wife." Vaughan v. Dalton-Lard Lumber Co., 119 La. 61, 43 So. 926; Philip v. Heraty, 135 Mich. 446, 97 N.W. 963, 100 N.W. 186; Blanks v. Southern Ry. Co., 82 Miss. 703, 35 So. 570; Pope v. Missouri Pac. R. Co., Mo.Sup., 175 S.W. 955; Molz v. Hansell, 115 Pa.Super. 338, 175 A. 880.

Suits against private insurance companies by putative wives have sometimes been successful. Usually the court finds that although the claimant is not a wife she is a dependent as provided in the policy. Smith v. Grand United Order of Odd Fellows, 17 La.App. 532, 136 So. 124; Supreme Lodge A. O. U. W. v. Hutchinson, 6 Ind.App. 399, 33 N.E. 816. In one case the court found the putative wife was a wife within the meaning of the policy because the parties had acted in good faith. Supreme Tent K. of M. of the World v. McAllister, 132 Mich. 69, 92 N.W. 770. Needless to say, these cases in which the court interprets the will of the parties are not relevant to the question of the meaning of the word "wife" in a statute.

6. See Esty v. Clark, 101 Mass. 36 where the court held that a legal wife was not included in a statute using the terms "child or other relation." Compare the cases arising under state workmen's compensation acts, supra note 5, where putative wives have recovered under the classification of "dependent."

7. The final decree awards her only $2,000. In fact the award was $6,000 against which was offset $4,000 of War Risk Insurance already paid her.

ther and step-mother of the decedent are inadequate in amount.[8] The commissioner found that the total pecuniary loss to the parents of Donald Retz by reason of his death was $7,500 and apportioned it $5,000 to the father and $2,500 to the step-mother. As each had received $2,500 of War Risk insurance, which was offset against their respective wards, the final decree provided for payment of only $2,500 for the benefit of the father and nothing for the step-mother. There is considerable doubt whether the adequacy of these awards is properly before us for review. The appeal of the United States challenged only one award in the Lawson suit. The cross-assignments which question the adequacy of the Retz awards were filed January 26, 1951. This was too late for a direct appeal.[9] There is much persuasive force in the argument of the United States that, under such circumstances, to permit the introduction of issues not germane to the appellants' appeal will thwart the purpose of Rule 13 of the court under which cross-assignments are authorized. However, whether the cross-assignments be stricken out as not authorized by the rule or whether the Retz awards be affirmed is of little moment. We shall assume without decision that the question of their adequacy is before us and shall consider that question on the merits. Such consideration results in their affirmance. The commissioner's report dealt with all relevant factors which are required to be considered in making an award under the statute, and his findings were confirmed by the district judge. Nothing has been advanced in this court which would justify us in upsetting the findings as clearly erroneous.

For the foregoing reasons we hold that the decree must be modified by striking out the award of $13,250 for the benefit of Antonia Martinez, and as thus modified it is affirmed.

8. The commissioner ruled that the step-mother, who was also the decedent's aunt, was a "parent" within the meaning of the statute. This ruling was not questioned before the district court, nor is it challenged here.

9. The final decree was entered October 25, 1950. Consequently the 90 days permitted by 28 U.S.C.A. § 2107 for filing notice of appeal had already expired.