Nettie FORD, Administratrix of the Estate of George D. Ford, Jr., Deceased, Plaintiff,

v.

The AMERICAN ORIGINAL CORPORATION, and Trawler Shinnecock, Inc., Defendants.

Civ. A. No. 78–637–N.

United States District Court, E. D. Virginia, Norfolk Division.

June 4, 1979.

John H. Klein, Breit, Rutter & Montagna, Norfolk, Va., for plaintiff.

Carter B. S. Furr, Jett, Berkley, Furr & Price, Norfolk, Va., for defendants.

## OPINION AND ORDER

CLARKE, District Judge.

Plaintiff administratrix, brought suit for wrongful death of the decedent ship repair yard worker, who died in an accident on board the Trawler SHINNECOCK on the navigable waters of Virginia. Through discovery it became apparent that claim was being made not only for the mother of the decedent, but also for a woman, Yvonne Spady (Ford), unrelated to the decedent through blood or marriage. Defendants have moved for summary judgment to the effect that the alleged beneficiary Spady is not entitled to recover any damages from the defendants.

For purposes of this motion, the following facts are taken as true. Decedent was killed while performing repair work on a vessel on the navigable waters of Virginia. Prior to his death, decedent had lived with Spady and her five children for several years. Decedent was divorced and had not remarried. Spady was not and is not married. There is no dispute that Spady received some support from the decedent prior to his death. The children, however, were not decedent's children, received no support from him, and no claim has been asserted on their behalf. There is also no contention that Spady was formally married or a relative of the decedent.

Defendants contend that under these circumstances Spady is entitled to no recovery in a wrongful death action under general maritime law or under the wrongful death statute of Virginia.

Prior to 1970, the established principle was that there could be no recovery in the admiralty courts for wrongful death under general maritime law in the absence of a statute allowing such recovery. *The Harrisburg*, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886). Thus, suitors had to look to state wrongful death statutes for a right of action.

In 1920, Congress acted to furnish a remedy for deaths beyond the jurisdiction of any state by passing two statutes. The first was the Death on the High Seas Act (DOHSA), 46 U.S.C. §§ 761–768. DOHSA provides a remedy in death situations occurring at sea more than a maritime league from shore. The second was the Jones Act, 46 U.S.C. § 688, which, by extending to seamen the protection of the Federal Employers' Liability Act, 45 U.S.C. §§ 51 et seq., provided a right of recovery against the employer for negligence where the death of a seaman results from a personal injury suffered in the course of his employment.

Between 1920 and 1970, deaths on the high seas gave rise to federal suits under DOHSA, while those in territorial waters were largely governed by state wrongful death statutes. The exception to this rule was an action for the death of a seaman by his employer's negligence under the Jones Act no matter where the wrong took place. *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 98 S.Ct. 2010, 2013, 56 L.Ed.2d 581 (1978).

Finally in 1970, the Supreme Court in *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), overruled *The Harrisburg* and held that a federal remedy for wrongful death does exist under general maritime law. In *Moragne*, plaintiff brought suit, alleging both negligence and unseaworthiness, against a shipowner for the wrongful death of a longshoreman aboard a vessel on the navigable waters of Florida. The case was removed to a federal court where the claim was dismissed on the basis that the state

wrongful death statute provided no recovery for unseaworthiness.

The anomalies presented by such a ruling were clear:

(a) The shipowner was liable for the personal injury of a harborworker within territorial waters, but frequently not for his death;

(b) Death caused by an unseaworthy vessel outside the three-mile limit imposed liability under the Death on the High Seas Act [footnote omitted] but not within the territorial waters of a State whose wrongful death statute excluded unseaworthiness claims; and

(c) That a "true" seaman covered by the Jones Act is provided no remedy for death caused by unseaworthiness within territorial waters, while a harborworker does have such a remedy when allowed by a State statute. [footnote omitted]

1 Norris, *The Law of Maritime Personal Injuries* § 133 (1975).

Recognizing these difficulties the Supreme Court in *Moragne* overruled *The Harrisburg* and held "that an action does lie under general maritime law for death caused by violation of maritime duties." 398 U.S. at 409, 90 S.Ct. at 1792.

The *Moragne* court, however, expressly left various subsidiary questions concerning the nonstatutory death remedy—including the schedule of beneficiaries entitled to recover in such actions—for "further sifting through the lower courts in future litigation." 398 U.S. at 408, 90 S.Ct. at 1792. The Court noted that the lower "courts will not be without persuasive analogy for guidance. Both the Death on the High Seas Act and the numerous state wrongful-death

acts have been implemented with success for decades." *Id.*

Thus, following *Moragne* federal courts were left with a variety of sources from which to select beneficiaries qualified to recover for the wrongful death of a decedent under general maritime law—DOHSA, Jones Act, state wrongful death statutes and the Longshoremen's and Harbor Workers' Compensation Act.[1]

Initially, we note that we do not agree with the defendants that the recent decision in *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 98 S.Ct. 2010 (1978), demands that the proper beneficiaries set out in DOHSA apply to *Moragne* suits. It is true that the *Higginbotham* Court stated that "DOHSA should be the courts' primary guide as they refine the nonstatutory death remedy, both because of the interest in uniformity and because Congress' considered judgment has great force in its own right." 436 U.S. at 624, 98 S.Ct. at 2014–15. Nevertheless, the Court also noted that in the process of answering the questions left open in the *Moragne* decision at least in cases occurring on territorial waters, the courts for policy reasons may look to sources other than DOHSA. 436 U.S. at 622, 98 S.Ct. at 2013–14. The *Higginbotham* decision held only that in other cases, such as an action expressly falling under DOHSA, where Congress has specifically spoken to a particular question, the courts are not free to ignore the legislative mandate for reasons of judicial policy.

Under the facts of the present dispute, we need not conclusively select one of the respective lists of beneficiaries from among the several choices. It is clear that under any of the possible statutory lists of qualified beneficiaries Spady may not recover.[2]

---

1. *See* note 2 *infra.*

2. We do, however, reject the adoption of the qualified beneficiaries as set out in the Longshoremen's and Harbor Workers' Compensation Act. 33 U.S.C. § 909. There is no question that there are cases holding that putative widows can recover as "widows" under the LHWCA. However, this Court in *McPherson*

*v. Steamship South African Pioneer*, 321 F.Supp. 42, 49 (E.D.Va.1971), has expressly recognized but refused to follow those authorities. *See Higginbotham, supra*, 436 U.S. at 624 & n. 19, 98 S.Ct. at 2014–15 & n. 19. In addition, while it could also be argued that Spady might qualify as a dependent (not a widow) under 33 U.S.C. § 909(d) as defined in the Tax Code, 26 U.S.C. § 152, we decline to

Beneficiaries under the several statutes are as follow:

*DOHSA* [46 U.S.C. § 761]—"decedent's wife, husband, parent, child, or dependent relative."

*Jones Act* [46 U.S.C. § 688, 45 U.S.C. § 51]—"surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee."

*Virginia Wrongful Death Act* [Va. Code 8.01–53]—"(i) the surviving spouse, children, and grandchildren of the deceased, or (ii) if there be none such, then to the parents, brothers, and sisters of the deceased, or (iii) if the decedent has left both surviving spouse and parent or parents, but no child or grandchild, [then] . . . to the surviving spouse and such parent or parents."

It has been previously held that those beneficiaries entitled to recover under the Jones Act and DOHSA are entitled to recover under a nonstatutory wrongful death action under *Moragne. Mungin v. Calmar Steamship Corp.,* 342 F.Supp. 479 (D.C.Md. 1972).

Under the facts of this case, however, we hold that Spady would not be entitled to recover as a beneficiary under any of the three statutes. Initially, Spady cannot recover as a "dependent relative" under DOHSA or as "next of kin dependent" under the Jones Act. It is conceded that Spady was not a relative of the decedent and dependency alone is not sufficient. Under DOHSA, the right conferred "is not for the benefit of all dependents but only for dependent relatives." *McPherson v. Steamship South African Pioneer,* 321 F.Supp. 42, 49 (E.D.Va.1971), *quoting Lawson v. United States,* 192 F.2d 479, 481 (2d Cir. 1951), *cert. denied,* 343 U.S. 904, 72 S.Ct. 635, 96 L.Ed. 1323 (1952). Similarly, we are not inclined to ignore the words "next of kin" in the Jones Act. Thus, in order for Spady to recover as a beneficiary,

she must qualify as a "decedent's wife" (DOHSA), "surviving widow" (Jones Act), or "surviving spouse" (Virginia statute).

■ The Fourth Circuit has held that in interpreting the term "surviving widow" in the Jones Act, admiralty courts must look to the domestic relations law of the domiciliary state. *Bell v. Tug Shrike,* 332 F.2d 330 (4th Cir. 1964), *cert. denied,* 379 U.S. 844, 85 S.Ct. 84, 13 L.Ed.2d 49 (1964). There is no question that the law of Virginia does not recognize common law marriages. *E. g., Offield v. Davis,* 100 Va. 250, 40 S.E. 910 (1902); *Heflinger v. Heflinger,* 136 Va. 289, 118 S.E. 316 (1923); *Bell, supra,* 332 F.2d at 331. Thus, the court in *Bell* held that a woman could qualify as a "surviving widow" under the Jones Act only through a lawful marriage. *Accord McPherson v. Steamship South African Pioneer,* 321 F.Supp. 42 (E.D.Va.1971).

Similarly, under DOHSA the term "decedent's wife" is to be interpreted as legal wife. The Second Circuit has held:

[T]he common meaning of "wife" is legal wife . . . [a]nd we see nothing to suggest that [the legislature] used the word in other than its normal meaning

. . .

*Lawson v. United States,* 192 F.2d 479, 480 (2d Cir. 1951), *cert. denied,* 343 U.S. 904, 72 S.Ct. 635, 96 L.Ed. 1323 (1952). Moreover, this Court expressly adopted the holding of *Lawson* in *McPherson, supra,* 321 F.Supp. at 49.

We reject plaintiff's argument that *McPherson* is not controlling. In that case, a woman had gone through a marriage ceremony with the decedent, claimed to be decedent's wife, but had not dissolved her prior marriage. Plaintiff, here, contends that the decision denying the woman a right to recover under either the Jones Act or DOHSA turned on the fact that there was a legal impediment to the marriage of which the parties had knowledge, thus barring a finding that a putative marriage existed. Plaintiff argues that the instant

accept that contention. The principles of recovery of the LHWCA are foreign to those of general maritime law. *Savoie v. Nolty J. Theri-* *ot, Inc.,* 396 F.Supp. 973 (E.D.La.1972). *See Higginbotham, supra* 436 U.S. at 624 & n. 19, 98 S.Ct. at 2014–15.

case differs as there was no impediment to a valid marriage between Spady and the decedent.[3]

Plaintiff's argument, however, ignores an essential point in *McPherson*. The discussion in that case of the existence of an impediment to the marriage went not only to the finding that no putative marriage existed because of the parties' knowledge of the impediment, but also to the Court's lack of concern with the issue of common law marriage. The Court addressed the matter of the possibility of a common law marriage under the laws of two states. Initially, the Court held that even if the law of South Carolina applied, the impediment barred any finding that a common law marriage existed even though such marriages were then recognized in that state. The Court also held, however, that even if no impediment existed and the law of Virginia applied, there could be no common law marriage as Virginia law holds such "marriages" as without substance. 321 F.Supp. at 46–47. Hence, if the law of Virginia applied, the existence of an impediment was immaterial to that portion of our holding.

This conclusion is further supported by the decision in *Tetterton v. Arctic Tankers, Inc.*, 116 F.Supp. 429 (E.D.Pa.1953). In *Tetterton*, a woman claimed to be a decedent-seaman's common law wife, although she innocently or knowingly had not dissolved her prior marriage. The court held that even assuming she created a valid common law marriage she did not become the decedent's lawful wife. The court recognized the line of cases that hold that where parties to an agreement, which but for an impediment would have constituted a valid marriage, continued in the relationship in good faith, upon removal of the impediment, the law will establish a valid common law marriage. However, the court held that even assuming that what the decedent

and claimant accomplished upon removal of the impediment would have been a valid common law marriage in some jurisdictions, she did not become a legal wife as the domiciliary state did not recognize common law marriages. Similarly, irrespective of the fact that there existed no impediment to a valid marriage between Spady and the decedent, she never became his legal wife under the controlling Virginia law.

Thus, Spady can qualify as a proper beneficiary under none of the three statutes. While the plaintiff suggests we fashion a federal common law of beneficiaries apart from these authorities, we are not so inclined. Notwithstanding this opinion in *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), the clear language of the Supreme Court in its most recent decision in *Higginbotham* was that "DOHSA should be the courts' primary guide as they refine the nonstatutory death remedy, both because of the interest in uniformity and because Congress' considered judgment has great force in its own right." 436 U.S. at 624 & n. 19, 98 S.Ct. at 2014–15 & n.19. We see no need to depart where both Congress and the General Assembly of Virginia have already provided those guidelines with identical results.

Defendants' motion for summary judgment barring any claim in this action on behalf of Spady is GRANTED.

---

**3.** We note that the undisputed fact that there was no impediment to a valid marriage between Spady and the decedent bars any finding that a putative marriage existed. By its own definition, a putative marriage is one which is forbidden by law. 2 Bouv. Law Dict., Rawle's Third Revision, 2774. Moreover, there is no contention that a marriage was duly solemnized or that at least one of the parties considered the relationship to be a legal marriage at all—all essential elements of a putative marriage. *McPherson, supra* 321 F.Supp. at 46. Thus, notwithstanding our holding that a putative wife enjoys no rights to recover under the Jones Act or DOHSA, there can be no finding that a putative marriage existed.