In the Matter of TIDEWATER
MARINE TOWING, INC., et
al., Plaintiffs,

v.

CURRAN–HOUSTON, INC., et
al., Defendants,

and

DOW CHEMICAL CO.,
Defendant-Appellee,

v.

Debra Ann VICKNAIR,
Claimant-Appellant.

No. 84–3616
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 2, 1986.

Gerald E. Meunier, New Orleans, La., for
Vicknair.

S. Gene Fendler, New Orleans, La., for
Dow Chemical Co., Placid Oil & Getty Oil
Refinfing Wanda Petroleum & Petroleum
Properties, Inc.

Before POLITZ, GARWOOD, and JOL-
LY, Circuit Judges.

## OPINION

POLITZ, Circuit Judge:

The district court dismissed the wrongful
death action of Debra Ann Vicknair, con-
cluding that "there is no cause of action for
death for a common-law spouse under the
general maritime law." For the reasons
assigned herein, we affirm that dismissal.[1]

### FACTUAL BACKGROUND

On September 4, 1979, the propeller of
the M/V WHITEFACE struck a high pres-
sure gas pipeline belonging to Dow Chemi-
cal Company, causing an explosion which
killed deckhand Daniel Dupre. Invoking

---

**1.** On appeal we may affirm the district court for
reasons other than those it assigns in support of
its ruling. *Moody v. United. States,* 783 F.2d

1244 (5th Cir.1986); *Bickford v. International
Speedway Corp.,* 654 F.2d 1028 (5th Cir.1981).

Fed.R.Civ.P. 9(h) and Supplemental Admiralty Rule F, the owners of the WHITE-FACE filed a petition for exoneration or limitation of liability in the court *a quo*. Various claims of survivors and personal representatives were consolidated, including the wrongful death claim of Debra Ann Vicknair, the common-law wife of Daniel Dupre. The district judge granted summary judgment to the vessel owners on the ground that Ms. Vicknair was not legally entitled to damages for the wrongful death of her common-law husband under either the Jones Act or general maritime law. Judgment was entered under Fed.R.Civ.P. 54(b), and we were asked on appeal whether a common-law wife residing in Louisiana had a wrongful death claim under the general maritime law. We declined to answer that question because Vicknair had not shown that she was the decedent's personal representative, an essential requirement for one asserting a claim under the general maritime law. *Tidewater Marine Towing, Inc. v. Dow Chemical Company*, 689 F.2d 1251 (5th Cir.1982). We remanded to permit an opportunity for the claim to be properly presented to the court.

On remand, Vicknair's claims were advanced by Dupre's parents, his personal representatives. In a bifurcated bench trial limited to the liability issue, the court found Dow negligent but exonerated Dupre's employer from liability, thereby negating the Jones Act claim. The trial court then addressed Vicknair's death claim under the general maritime law. Observing that there is no federal or admiralty law on domestic relations, "an area traditionally left to the states," and noting that Louisiana does not recognize the validity of the common-law union, the trial court concluded that if it were to apply the law of another state, it would find Vicknair to be a common-law wife, but as such, she could not assert a wrongful death claim under the general maritime law. This appeal followed, presenting for resolution the question whether Debra Ann Vicknair is entitled to a wrongful death claim, under the general maritime law, because of the death

of Daniel Dupre. We conclude that she is not.

## ANALYSIS

Under the admittedly appealing banner of maritime law uniformity and liberality, Vicknair suggests that a ruling should issue herein, declaring that a common-law wife, as defined by federal common law without reference to state laws, has a cause of action under the general maritime law for the wrongful death of her spouse. We decline that invitation.

■ The goal of uniformity in admiralty is moderated by legitimate concerns of federalism. *See generally* D. Robertson, *Admiralty and Federalism* (1970). We are aware of few instances in which state interests are accorded more deference by federal courts than in defining familial status. We must look to applicable state law to determine the legal relationship existing between Debra Ann Vicknair and Daniel Dupre at the time of his untimely death. Because of our conclusion on this initial issue, we do not reach and do not consider the correctness of the district court's conclusion that "there is no cause of action for death for a common-law spouse under the general maritime law." We limit our examination to inquiring whether Debra Ann Vicknair is entitled to claim the common-law marital status.

That threshold inquiry is precipitated by the decision of the Supreme Court in *Moragne v. States Marine Lines*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), overruling *The Harrisburg*, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886), and holding that an action for death caused by violation of duties was cognizable under the general maritime law. The schedule of beneficiaries in three federal acts were submitted as the appropriate listing of persons who might assert the newly-pronounced wrongful death claim: the Death on the High Seas Act, 46 U.S.C. § 761, the Jones Act, 45 U.S.C. § 51 (provision of FELA incorporated by the Jones Act), and the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 902(16), 909, with the schedule in DOHSA being suggested as the most

appropriate. The Court declined to specify the persons who might bring such a wrongful death action, or to rule whether that determination should be made without reference to the law of the involved states, but declared: "We do not determine this issue now, for we think its final resolution should await further sifting through the lower courts in future litigation." 398 U.S. at 408, 90 S.Ct. at 1792.

A review of decisions involving the status determination under the three federal Acts does not reflect either an abrogation or avoidance of state law. We find, rather, only one case on all fours, a district court case holding that a female "friend" of the decedent was not a *Moragne* beneficiary because she had never become decedent's "legal wife" under the laws of Virginia, which did not recognize the common-law spouse doctrine. *Ford v. American Original Corp.*, 475 F.Supp. 10 (E.D.Va.1979).

DOHSA, suggested in *Moragne* as having the preferred listing of beneficiaries, provides that "the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued." 46 U.S.C. § 761. The cases interpreting the definition of "wife" have implicitly relied upon state law. *See, e.g., Lawson v. United States*, 192 F.2d 479 (2d Cir.), *cert. denied*, 343 U.S. 904, 72 S.Ct. 635, 96 L.Ed. 1323 (1951) (holding that a putative wife was not a "legal" wife and therefore could not recover for wrongful death of her putative husband under DOHSA); *Tetterton v. Arctic Tankers, Inc.*, 116 F.Supp. 429 (E.D. Pa.1953) (declaring that even if a valid common-law marriage had been perfected under the law of Florida, which recognized common-law marriages, the claimant still did not become a "legal wife" but was at most a common-law wife, and under the doctrine of *Lawson* the congressional intent of DOHSA was only to permit the recovery of wrongful death damages by "legal" spouses); *McPherson v. S.S. South*

*African Pioneer*, 321 F.Supp. 42 (E.D.Va. 1971) (following the doctrine of *Lawson*). *See generally* Annot., 15 ALR Fed. 834.

Similarly, the meanings of the LHWCA's terms "wife of husband" and "widow or widower" have been determined by reference to state law. *See, e.g., Ryan-Walsh Stevedoring Co. v. Trainer*, 601 F.2d 1306, 1313 (5th Cir.1979) ("To determine whether a claimant is decedent's 'wife' state law is dispositive because the LHWCA does not define this operative term."); *Powell v. Rogers*, 496 F.2d 1248 (9th Cir.) (since the LHWCA does not define "wife," state law must be used to give meaning to that term), *cert. denied*, 419 U.S. 1032, 95 S.Ct. 514, 42 L.Ed.2d 307 (1974); *Marcus v. Director, Office of Workers' Compensation Programs*, 548 F.2d 1044 (D.C.Cir.1976) (since undefined by the LHWCA, local law gives meaning to term surviving "wife"); *Texas Employers' Ins. Ass'n v. Shea*, 410 F.2d 56 (5th Cir.1969) (declaring that in defining the word child as a beneficiary in the LHWCA, one must look to whether the claimant is a "legitimate child" under the laws of the state of the claimant's domicile).

The cases construing the Jones Act also look to state law for guidance in defining the beneficiaries. *See, e.g., Murphy v. Houma Well Serv.*, 409 F.2d 804 (5th Cir. 1969); *Beebe v. Moormack Gulf Lines*, 59 F.2d 319 (5th Cir.), *cert. denied*, 287 U.S. 597, 53 S.Ct. 22, 77 L.Ed. 520 (1932).

We are persuaded that state law furnishes the rule for decision of the status issue underlying the question posed in the instant case, namely, whether Debra Ann Vicknair may advance a wrongful death claim because of the wrongful death of Daniel Dupre. To do so she must have been his wife at the time of his death.

■ The facts of record clearly reflect that Debra Ann Vicknair and Daniel Dupre were never legally married in the traditional sense. Theirs was the typical common-law marital relationship, the entirety of which occurred in the State of Louisiana while they were residents and domiciliaries

of that State. The validity of their marital relationship must be determined by reference to the laws of Louisiana. In *Ex Parte Burrus*, 136 U.S. 586, 593–94, 10 S.Ct. 850, 852–53, 34 L.Ed. 500 (1890), the Court declared: "The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *See also Goins v. Goins*, 777 F.2d 1059 (5th Cir.1985); *Spearman v. Spearman*, 482 F.2d 1203 (5th Cir.1973). These and similar cases demonstrate that any marital relationship that exists between parties is created by the laws of the involved states.

■ The law of Louisiana is not in dispute. Although it is commonly believed that the Louisiana Civil Code flows from and is patterned entirely on the *Code Napoleon*, in reality a large part of Louisiana's Code, including the section on domestic relations, derives from Spanish law through *las Siete Partidas*. *See generally* R. Kilbourne, *A History of the Louisiana Civil Code: The Formative Years, 1803–1839* (1986) (forthcoming); Pascal, *Sources of the Digest of 1808: A Reply to Professor Batiza*, 46 Tul.L.Rev. 603 (1972). Louisiana does not recognize the validity of a common-law marriage. Louisiana Civil Code arts. 88, 90–98. Civil Code article 88, captioned "Validity of marriage," is specific: "Such marriages only are recognized by law as are contracted between a man and a woman and solemnized according to the rules which the law prescribes." The Louisiana Supreme Court early recognized the validity of a common-law marriage perfected in a state permitting them, but observed that "a common-law marriage cannot be contracted by virtue of the law of Louisiana." *Succession of Marinoni*, 177 La. 592, 148 So. 888, 894 (1933) (*on reh'g*). There has been no variation from that rule which is typically stated as an absolute. "Louisiana Law does not recognize 'common law marriage'...." *Liberty Mut. Ins. Co. v. Caesar*, 345 So.2d 64, 65 (La.App.) (footnote omitted), *cert. denied*, 347 So.2d 1118 (La.1977).

Since Debra Ann Vicknair is neither the legal nor common-law wife of Daniel Dupre, she has no standing to assert a claim under the general maritime law for damages resulting from his wrongful death. Accordingly, the judgment of the district court dismissing her wrongful death claim must be and is AFFIRMED.