Yvonne Broussaud GIBSON, Plaintiff,

v.

Thomas F. HUGHES, Deputy Commissioner of the United States Department of Labor, Foreign Compensation District, Atlas Constructors, Commercial Insurance Co. of Newark, New Jersey, Defendants.

United States District Court
S. D. New York.
March 14, 1961.

Lewy, Rosoff & Stern, New York City, for plaintiff. Theodore H. Friedman, New York City, of counsel.

S. Hazard Gillespie, Jr., U. S. Atty. for the S. D. of New York, New York City, for the United States. Anthony H. Atlas, Asst. U. S. Atty., New York City, of counsel.

FREDERICK van PELT BRYAN, District Judge.

This is an action to review a compensation order and award of a Deputy Commissioner of the United States Department of Labor, Bureau of Employee's Compensation, Foreign Compensation District, made under the Longshoremen's & Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., as extended to defense base areas by 42 U.S.C.A. § 1651 et seq. The order and award denied death benefits to the plaintiff who claims to be entitled thereto as the lawful surviving wife of Rama R. Gibson, deceased.

This court has jurisdiction and venue is properly laid under 33 U.S.C.A. § 921 as modified by 42 U.S.C.A. § 1653.

Both the plaintiff and the Deputy Commissioner have moved for summary judgment on the record before the Bureau.

■■ There is no dispute as to the facts. The only question is the correctness of the Deputy Commissioner's conclusion of law in refusing an award to plaintiff Yvonne Broussaud Gibson on the ground that she "was not the lawful surviving wife of the decedent" under § 909 of the Longshoremen's & Harbor Workers' Compensation Act. 33 U.S.C.A. § 909. The term "surviving wife" is the equivalent of "widow" as defined in Section 902(16) of the Act. See Weeks v. Behrend, 77 U.S.App.D.C. 341, 135 F.2d 258. "Widow" is defined in that section as including "only decedent's wife living with him or dependent for support upon him at the time of his death * * *."

The undisputed facts as found by the Deputy Commissioner are as follows:

On August 23, 1943, the decedent, Rama R. Gibson, a citizen of the United States and then a resident of the District of Columbia, married Marion Browne. The marriage took place in Maryland. On June 23, 1946 the decedent and Marion Browne Gibson voluntarily separated. After separation had persisted for more than five years without cohabitation, an interlocutory judgment of divorce in favor of Marion Browne Gibson was entered in the United States District Court for the District of Columbia on June 29, 1953.

The judgment provided that it "shall not take effect until the expiration of six months from the date hereof." The effective date was therefore December 29, 1953.

After the separation from Marion Gibson the decedent left the United States and went to France where he lived with Yvonne Broussaud, the plaintiff, from 1946 until 1948. In 1948 Gibson and plaintiff moved to Tunis and in 1949 they went to what was then French Morocco. Two children were born of this relationship, one in 1947 and the second a year later.

On December 10, 1953 the decedent and plaintiff entered into a civil ceremonial marriage at Casablanca, Morocco. Some months later, in September of 1954, the births of the two children were registered with the United States Department of State at Casablanca as the lawful children of Rama R. and Yvonne Gibson.

The couple continued to live together in what they both considered to be a state of matrimony until Rama Gibson was killed in an accident on May 5, 1956 at a defense base at Nouasseur, French Morocco, while employed as a truck foreman for defendant Atlas Constructors. His employment was within the coverage of the Longshoremen's & Harbor Workers' Compensation Act as extended to Defense Base Areas. There is no question but

that the accident was such as to entitle those covered by the statute to death benefits.

Such benefits have been denied Yvonne Gibson solely on the ground that because she married decedent on December 10, 1953, nineteen days before the District of Columbia divorce between decedent and Marion Browne Gibson became final, she is not a "surviving wife" within the meaning of the Compensation Act.

The Deputy Commissioner found specifically that on December 10, 1953 Gibson was not legally divorced from his first wife, that his civil marriage to the plaintiff at Casablanca on that day was "not a valid marriage", that plaintiff was not the legal wife of Gibson on that day, and that she was not his widow or lawful surviving wife on May 5, 1956, three years later when Gibson was killed

■ Plaintiff claims that the Commissioner's conclusions were in error since the applicable law determining the marital status of plaintiff is that of French Morocco, which is the same as the law of France [1], and under such law plaintiff is recognized as Gibson's lawful wife at the time of his death.

Defendant Commissioner maintains that the controlling law is not that of French Morocco but either the law of New York, which he claims to be the forum, or the law of the District of Columbia, governing the prior marriage between Gibson and Marion Browne. In any event, he says that the technical defect in plaintiff's marriage is such as to exclude her from being Gibson's "surviving wife" within the meaning of the Compensation Act.

The problem of what law governs the plaintiff's rights lies at the threshold of the case. Congress might have chosen to spell out the answer to the problem in the statute and had it done so the problem could be determined from the statute itself. But it did not choose to do so and therefore it must be decided which of several alternative choices of law should control.

One solution is to view the question as one of federal law since a purely federal right is involved. Cf. Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838. The statute may also be viewed as incorporating the "appropriate" law in the conflicts of laws sense in so far as such law would be within the tolerable limits of the statutory language. See De Sylva v. Ballentine, 351 U.S. 570, 581, 76 S.Ct. 974, 100 L.Ed. 1415. Alternatively, taking into account the purpose and policy of the legislation, the appropriate law of domestic relations might be applied only when and to the extent that such law harmonizes with the legislative purpose. Nott v. Flemming, 2 Cir., 272 F.2d 380; Beebe v. Moormack Gulf Lines, 5 Cir., 59 F.2d 319, 320, certiorari denied 287 U.S. 597, 53 S.Ct. 22, 77 L.Ed. 520; Thompson v. Lawson, 347 U.S. 334, 336, 74 S.Ct. 555, 98 L.Ed. 733. But see Bolin v. Marshall, 9 Cir., 76 F.2d 668, certiorari denied 296 U.S. 573, 56 S.Ct. 116, 80 L.Ed. 404.

■ Neither of the parties urges that purely federal law applies, and, in fact, this would not be appropriate here. While a federal right is involved the statute deals with a familial relationship. There is no federal law of domestic relations, which is primarily the concern of the locality. De Sylva v. Ballentine, supra, 351 U.S. at page 580, 76 S.Ct. at page 979. The problem, therefore, is to determine whether the law governing the marital status of the plaintiff is that of New York, of the District of Columbia, or of French Morocco (the law of France).

■ The normal conflicts rule determining marital status is that of the place where the marriage was contracted or of the domicile of the contracting parties. Here both coincide in French Morocco and the normally appropriate law in the conflicts sense would be the law of France.

---

1. The parties agree that in so far as foreign law may be pertinent here French law should apply and that no additional problem is presented by Morocco's independence.

The plaintiff proved the law of France applicable to her situation as a fact before the Commissioner by the affidavit of a member of the bar of France as an expert on French law. His credentials were not questioned before the Commissioner nor are they here, and no evidence controverting or impeaching in any way that presented by the plaintiff was offered.[2]

The uncontroverted evidence on this record is (1) that under French law there is a presumption of validity attached to the plaintiff's duly celebrated and recorded marriage to the decedent unless and until a court action is brought adjudicating that marriage to be invalid; (2) that even were an action brought for an adjudication of the invalidity of the marriage the full benefits of a putative marriage would be accorded her; and (3) that plaintiff as a spouse in good faith of a putative marriage "is accorded the full recognition and civil effects of a widow and surviving wife as of the date of death of her husband if such date is prior to the adjudication of invalidity, which effects will include the right to a pension and compensation benefits as surviving wife, where such spouse is the sole eligible and possible claimant." [3]

The defendant recognizes that French law would ordinarily be applied here to determine plaintiff's status unless such law is against the public policy of the forum. He urges, however, that in this case the public policy of the forum is against French law which therefore cannot be applied.

To reach this conclusion defendant takes the curious position that the law of New York is the law of the forum and should be determinative here. I see no merit in this position. It is true that in entirely different circumstances it has been held that local law should be utilized to determine questions of status where there are relevant local contacts, e. g., De Sylva v. Ballentine, supra. But here there are no local contacts whatsoever. As far as appears neither plaintiff, decedent, or his former wife were ever in the State of New York. The marriages, the divorce and the domicile of any of the parties have no nexus with New York.

■ It would be entirely unwarranted to say that because a federal administrative agency happens to be sitting in a locality which has no contacts whatsoever with the matter in issue, the public policy of that place is the law of the forum and should govern a federal right. It is quite plain that the foreign compensation district having jurisdiction over the plaintiff's claim sits in New York and holds hearings there only as a matter of administrative convenience. See 20 C.F.R. 51.2. There is no reason whatsoever for applying New York law to the adjudication of claims in the administrative proceedings of the district. It would be a strange result, indeed, to determine the substantive rights of a French national under a federal statute of general application by the purely fortuitous circumstance that an administrative agency, as an administrative matter, chose to open an office in a particular state.

This court has neither the obligation to nor should it apply New York law in a case involving a right granted by federal statute where neither the subject matter nor the parties have the slightest connection with the state within which it

---

2. The defendant also refused an opportunity to present evidence here as to French law.

3. French Code Civil:
   Art. 201: "A marriage which has been declared to be invalid nevertheless accords full civil effects to the spouses as well as to the children, when the marriage has been entered into in good faith."

Art. 202: "If good faith exists on the part of only one of the two spouses, full civil effects of the marriage shall be accorded to the spouse acting in good faith and to the children of the marriage."

In a memorandum the defendant takes the position that foreign law should be proved as a fact but as previously noted the defendant has refused the opportunity to go forward on the issue.

is sitting. New York law is not the appropriate law to be applied here.[4]

As an alternative to New York law defendant urges that the law of the District of Columbia, where the interlocutory decree of divorce was entered, should be applied. But it is the validity of the second marriage which is at issue here, not the first, and under the conflicts rules, too well-settled to require discussion, the law of France and not the local law of the District of Columbia is appropriate.

But in any event, Oliver v. Oliver, 87 U.S.App.D.C. 334, 185 F.2d 429, on which defendant relies, does not sustain his position here. The Oliver case concerned a marriage in Maryland between two District of Columbia domiciliaries within the six month period before a District of Columbia divorce decree granted to one of them had become final and effective. The District of Columbia court held the second marriage void. But there are a number of factors to which the court referred which distinguish that case from the case at bar: (a) the second marriage was void ab initio in Maryland, the place of celebration, without the necessity of a decree to that effect. Here the second marriage is valid in France and could not be declared void except by judicial decree (see supra, at page 567); (b) since the parties to the second marriage in the Oliver case were District of Columbia domiciliaries, under District of Columbia local law, any marriage entered into in another jurisdiction which is illegal in the District may be declared void as to them even though valid in the jurisdiction of celebration.[5] Cf. Matter of May's Estate, supra. In the case at bar neither party was a domiciliary of the District of Columbia at the time of the second marriage nor thereafter. There appears no reason to give the local law of the District of Columbia extraterritoriality in France so as to void a marriage celebrated in France by French domiciliaries which is valid under French law; (c) the second wife in the Oliver case was fully aware of the statutory disability when she contracted the second marriage and was suing for support in the District of Columbia courts even before the dissolution of the first marriage had become effective. In the instant case there is no showing that the second marriage was entered into in bad faith; the question as to its validity did not arise until long after the divorce became final and then only after death in the context of a Workmen's Compensation action to enforce a federal right.[6]

---

4. It may be noted that there is considerable doubt that New York would view the decedent's second marriage to plaintiff as so repugnant to the public policy announced in Section 6 of the New York Domestic Relations Law as to be wholly void under the circumstances presented here. Neither the first nor the second marriage took place in New York, and France, the place of the matrimonial domicile, deems the marriage valid. Cf. Matter of May's Estate, 305 N.Y. 486, 114 N.E.2d 4, holding that even though New York domiciliaries had left the state in order to avoid the prohibition in Section 5 of the New York Domestic Relations Law against incestuous marriages, the marriage, valid where celebrated, was valid in the forum. Landsman v. Landsman, 302 N.Y. 45, 96 N.E.2d 81, on which defendant relies, deals only with a New York first marriage and the effect of a second foreign marriage while the first was undissolved. The case is plainly distinguishable from the case at bar. See,

also, Apelbaum v. Apelbaum, 2nd Dept., 7 A.D.2d 911, 183 N.Y.S.2d 54, as the proof required to establish the validity of the first marriage so as to overcome the presumption of validity of the second. Such proof has also been required in Workmen's Compensation cases similar to this one. See Alto v. State Industrial Accident Commission, 118 Or. 231, 246 P. 359. See, also, Winder v. Consolidated Underwriters, 5 Cir., 107 F.2d 973.

5. 30 D.C.Code (1940) § 105. "If any marriage declared illegal by the aforegoing sections shall be entered into in another jurisdiction by persons having and retaining their domicile in the District of Columbia, such marriage shall be deemed illegal, and may be decreed to be void in said District in the same manner as if it had been celebrated therein. (Mar. 3, 1901, 31 Stat. 1392, ch. 854, Sec. 1287.)"

6. See at page 565, supra.

Thus the law of the District of Columbia is not apposite and in any event the Oliver case does not control here.

The defendant further argues that even if New York or District of Columbia law is not applied, the second marriage in France is technically defective to such an extent that Congress could not have intended that one in plaintiff's position could be a surviving wife within the meaning of the Act.

To support this position defendant relies on cases such as Lawson v. United States, 2 Cir., 192 F.2d 479, certiorari denied 343 U.S. 904, 72 S.Ct. 635, 96 L.Ed. 1323; Green v. Crowell, 5 Cir., 69 F.2d 762, certiorari denied 293 U.S. 554, 55 S.Ct. 88, 79 L.Ed. 656, and Beebe v. Moormack Gulf Lines, supra. For a variety of reasons these cases are not controlling here.

The Lawson case was concerned with the Death on the High Seas Act, 46 U.S.C.A. § 761 et seq.,[7] and claims by two women that they were "wives" of the decedent and entitled to share in the recovery. It was held that the wife of a second bigamous marriage where there had been no divorce at all from the prior wife had no standing under the statute. The second marriage took place in New York where it was clearly void under New York law. Moreover, the wife of the wholly undissolved first marriage was a party to the action and in fact had been given an award for the death of the husband. The court held that Congress had not intended "that a man could have two or more wives all recovering at once under this statute". 192 F.2d at page 480.

Here, of course, there is no question of a multiple recovery. The divorce from Marion Browne Gibson has long since become final and she has no right whatsoever to compensation benefits.

Under the Longshoremen's & Harbor Workers' Compensation Act Congress was fully aware of the possibility of aliens being beneficiaries of the statute. See, e. g., 33 U.S.C.A. § 909(g). This is specifically re-emphasized in the amendment which made that Act generally applicable to defense bases overseas. See 42 U.S.C.A. § 1652(b). Yet Congress did not in any way circumscribe the phrase "surviving wife" so as to exclude wives recognized by the laws of their own countries. There is no reason to assume Congress intended that rights conferred upon plaintiff by French law should not be recognized under normal conflicts principles.

The cases are increasingly liberal in giving effect to foreign marriages, valid where celebrated, though repugnant to the law of the forum. See, e. g., Matter of May's Estate, supra. In re Dalip Singh Bir's Estate, 83 Cal.App.2d 256, 188 P.2d 499.[8]

Green v. Crowell, supra, lends no support to the defendant either. That case merely held that the plaintiff had not succeeded in establishing her status as common law wife under the law she relied on. Thus viewed the dictum in the case supports plaintiff, not defendant.

Defendant lays special emphasis on Beebe v. Moormack Gulf Lines, supra, because it discusses the law of Louisiana which, like the law of France, is based on the civil law. However, that case supports plaintiff more than it does defendant.

Like Lawson the Beebe case holds that under the wrongful death provisions of the Jones Act (46 U.S.C.A. § 688) Congress intended that there could be only

---

7. Section 761 provides that an action may be brought on behalf of the "decedent's wife".

8. Modern statutory law is to the same effect. See, e. g., Cal.Civ.Code, sec. 63 (Deering 1949, West's Ann.Cal.Civ. Code, § 63); Idaho Code § 32–209 (1947); Kan.Gen.Stat.Ann. 23–115 (1949); Ky.Rev.Stat.Ann. § 402.040 (Baldwin 1955); Neb.Rev.Stat. § 42–117 (1943, Reissue 1952); N.M.Stat.Ann. § 57–1–4 (1953); N.D.Rev.Code, 14–0308 (1943) (but an exception as to residents of North Dakota contracting a marriage prohibited by that state); S.D.Code 14.-0103 (1939); Utah Code Ann. 30–1–4 (1953).

one "surviving widow", not two (the seaman had not divorced his first wife).

In arriving at this conclusion, however, the court stressed Louisiana cases such as Vaughan v. Dalton-Lard Lumber Co., 119 La. 61, 43 So. 926, which had denied the claim of a putative wife under the state wrongful death statute. It held that Jones v. Powell Lumber Co., 156 La. 767, 101 So. 135, was inapposite since there a divorce from the first wife, consummated after the second marriage, terminated the first wife's rights, leaving only one "widow" who was entitled to benefits under the Louisiana Workmen's Compensation Act, LSA–R.S. 23:1021 et seq.

It is the Jones case, not the Beebe case, which is apposite here. Beebe only distinguished Jones because Jones was on all fours with the case at bar.

The Jones case itself distinguished the Vaughan case (relied on in Beebe) as being a wrongful death case, not a Workmen's Compensation case. In so doing the court stated:

"The Court of Appeal has referred us to the decision in Vaughan v. Dalton-Lard Lumber Co., 119 La. 61, 43 South. 926, maintaining that the right of a widow to sue for damages for the death of her husband, under article 2315 of the Civil Code, as amended, applies only to a lawful marriage—not to a putative marriage. The doctrine of the decision is that the right of action for damages for the death of a human being is contrary to the general rule and cannot be extended by implication to other surviving relations of the deceased than those to whom the right is expressly and plainly granted by statute. See Flash v. Louisiana Western Railroad Co., 137 La. 352, 68 South. 636, L.R.A.1916E, 112. On the contrary, the right of a surviving dependent relation of a deceased workman, to be compensated under the Employers' Liability Act, should not be construed strictly in favor of the employer, but rather liberally in favor of the employee and his dependent relations.

"Our answer to the question of the Court of Appeal is that the plaintiff in this case is entitled to the compensation allowed to a widow, under the Employers' Liability Act." Jones v. Powell Lumber Co., supra, 101 So. at page 136.[9]

The Louisiana courts have followed the Jones case. Eason v. Alexander Shipyards, La.App., 47 So.2d 114. See, also, Jenkins v. Pemberton, La.App., 87 So.2d 775.

The Louisiana law is thus similar to the law of France which applies in the case at bar and the holdings of the Louisiana courts are persuasive.

Allowing recovery to the putative wife in the field of Workmen's Compensation is not restricted to jurisdictions in which such a claimant is granted special rights under civil law concepts. In a case indistinguishable on its facts from the case at bar Kansas allowed recovery. Freeman v. Fowler Packing Co., 135 Kan. 378, 11 P.2d 276. The theory adopted by the Kansas courts is that a marriage celebrated within the six month interlocutory period is void *only* during such period, at least where Workmen's Compensation benefits are concerned. See Peters v. Peters, 177 Kan. 100, 276 P.2d 302.[10] Other jurisdictions have reached similar results. See Sledd v. State Compensation Commissioner, 111 W.Va. 509, 163 S.E.

---

9. In holding that the putative wife could recover the court was construing a Workmen's Compensation Law which conferred benefits on a "widow". See L.S.A.–R.S. 23:1232.

10. The Kansas line of cases is particularly strong since the courts were dealing with a statute that restricted benefits to "legal widows".

12, 80 A.L.R. 1424 [11]; Alto v. State Industrial Accident Commission, supra.[12]

 It seems to me that those jurisdictions which have interpreted their compensation statutes to permit recovery on facts similar to those here have reached the proper result. Not only are Workmen's Compensation statutes remedial in nature, but the Act, under which this plaintiff seeks benefits, by its terms must be construed liberally.[13]

Plaintiff's situation under the law of the marital domicile is not substantially different than it would have been had she waited an additional few days to marry the decedent. The economic consequences of death would be unchanged by a later marriage anniversary. To sustain defendant's position, without a clear mandate that Congress intended to deny the benefits of the Act to one in plaintiff's situation, would be to exalt a technicality without justification. The stark reality of the death of the wage earner to his dependents is no different in this case than any other. Cf. Nott v. Flemming, supra. A Workmen's Compensation Law should not be hobbled by nice rules and small distinctions more appropriate for the law of conveyancing.

Those cases in other areas of the law which deny standing to a putative wife should not be applied here. In the first place it appears here that under French law plaintiff is the lawful widow of decedent absent a judicial decree declaring her marriage invalid. Moreover, in so far as the rationale of such cases depends upon possible double recovery by two "wives" there can be no fear of that in this case. To allow plaintiff to recover does not open the door to multiple claims. Where there are multiple claimants there is always room to determine which is entitled to recover. Fulton Bag & Cotton Mills v. Fernandez, La.App., 159 So. 339. There is no such question here.

I hold that on the undisputed facts and on a proper construction of the statute the required "conjugal nexus" has been proved by plaintiff to have subsisted at the time of decedent's death (see Thompson v. Lawson, 347 U.S. 334, 74 S.Ct. 555, 98 L.Ed. 733) and that she is entitled to an award of death benefits as decedent's surviving wife.

Plaintiff's motion for summary judgment is in all respects granted. The motion of defendant Deputy Commissioner for summary judgment is denied.

Judgment will be entered accordingly.

---

11. The rationale in Sledd was that if a judicial decree of nullity was required even where a marriage was "void" by statute the Workmen's Compensation Commission could not take it upon itself to declare a marriage void and deny recovery. In this case French law seems to require such a judicial proceeding.

12. See Notes 35 A.L.R. 106; 80 A.L.R. 1430; 100 A.L.R. 1102, for a breakdown of jurisdictions.

13. 33 U.S.C.A. § 920 provides that: "In any proceeding for the enforcement of a claim for compensation * * * it shall be presumed, in the absence of substantial evidence to the contrary—
  "(a) That the claim comes within the provisions of this chapter."