332 F.2d 330
 Mrs. Mary Virginia BELL, individually and as administratrix of the Estate of John Ware Bell, deceased, Appellant,
v.
TUG SHRIKE, in rem, Southern Transportation Company, Incorporated, a corporation, and Southern Tug Corporation, in personam, Appellees.
 No. 9178.
 United States Court of Appeals Fourth Circuit.
 Argued January 15, 1964.
 Decided May 13, 1964.
 
 Sidney H. Kelsey, Norfolk, Va., for appellant.
 Roy L. Sykes, Norfolk, Va. (R. Arthur Jett, Jr., and Jett, Sykes & Berkley, Norfolk, Va., on brief) for appellees.
 Before SOBELOFF, Chief Judge, J. SPENCER BELL, Circuit Judge, and BARKSDALE, District Judge.
 SOBELOFF, Chief Judge.
 
 
 1
 The Jones Act suit brought by Mrs. Mary Virginia Bell for the death of John Ware Bell, a seaman, was settled before trial for an agreed sum; yet this further litigation has been necessary to resolve the validity of her claim as John Ware Bell's "surviving widow."[1] There was and is no problem of competing claimants. The sole issue is whether the District Court properly concluded that Virginia state law applies, and that since, according to that law, she was not legally married to the decedent at the time of his death, she was therefore not his lawful widow entitled to the settlement. Stated differently, this appeal focuses upon the troublesome problem as to whether a federal court sitting in admiralty should be governed by the normally applicable state domestic relations law, or by some other rule which the court may fashion.
 
 
 2
 It is undisputed that John Ware Bell was married on three different occasions in the course of his lifetime. First, he contracted a marriage in 1940, which was dissolved by divorce in June, 1951. He entered into his second marriage one week later, but he and his second wife were separated in 1954 and this marriage also was ended by divorce, on September 18, 1957. At issue in this case is a ceremonial marriage of the seaman to the appellant in Mathews County, Virginia, on December 13, 1956, when he was still legally married to the second wife. Between the date of the last-mentioned marriage and September 12, 1959, when the Tug SHRIKE capsized in the Chesapeake Bay, causing John Ware Bell's death, he and the appellant lived together in Norfolk, Virginia, and held themselves out to the community as husband and wife. Because of the nature of their relationship, the appellant claims that she is entitled to recognition as the decedent's widow under the Jones Act.
 
 
 3
 After the appellant brought her action in the District Court as administratrix, a settlement was arranged between all parties concerned whereby the shipowner agreed to pay a total of $60,000, of which sum $15,500 was allotted to the children of the decedent by his first wife, and the remaining $44,500 to the appellant, provided she could establish her right to recover as Bell's widow under the terms of the Jones Act. If she failed in this, the $44,500 was to be retained by the shipowner, there being no other claimant as Bell's widow.
 
 
 4
 The appellant maintains that, although her marriage to Bell was bigamous, a valid common-law marriage was created once the impediment of the prior existing marriage was removed by divorce in 1957. The District Court disagreed, reasoning that because "[t]here is no admiralty law of domestic relations," a federal court sitting in admiralty must look to state law to define statutory beneficiaries under the Jones Act. Bell v. Tug Shrike, 215 F.Supp. 377, 381 (E.D.Va.1963). Virginia law does not recognize common-law marriages.[2] On that basis the appellant was denied recognition as the surviving widow.[3]
 
 
 5
 Appellant contends, however, that state law should not have been applied because a federal court sitting in admiralty is not bound by the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Appellant maintains that admiralty has a choice of law and that, if the application of state law would undermine a federal right, the court should look to that law which will best effectuate admiralty principles and achieve the national uniformity that is desirable in this area. She urges that these fundamental principles would be better satisfied by accepting her as a common-law wife instead of depriving her of that status by resort to the domestic relations laws of Virginia.
 
 
 6
 Whether or not the Erie doctrine is limited to diversity cases or also governs where federal judisdiction is grounded in admiralty is a matter very much in dispute.[4] Mr. Justice Black has commented that Erie "did not answer all questions * * *. For example * * * the extension of the doctrine to admiralty jurisdiction, and the total impact of the principle in cases other than those of diversity of citizenship have not yet been finally determined." 13 Mo.B.J. 173, 175 (1942). To our understanding this question is still unsettled. The Supreme Court appears to have adopted a flexible standard, applying in admiralty cases either maritime principles or state law, depending upon the nature of the case and the problems involved. The determining factor as to which law governs seems to be the availability of an admiralty rule which is generally accepted and clearly defined. Where such a rule exists it will prevail over conflicting local law, regardless of Erie; but where no admiralty rule has been clearly established, an admiralty court will, in the absence of legislation, hesitate to lay down a rule for uniform application in the face of conflicting possible choices.[5]
 
 
 7
 This approach is best exemplified by comparing Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953), and Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955). In the former the plaintiff asserted a claim for a maritime tort on the civil side of the District Court. There was a jury finding that he had been contributorily negligent. It was urged on appeal that this finding should bar recovery either on the theory that admiralty law, having no rule of its own on the subject, must look to the common law, or on the theory that the state rule on the subject controlled under the Erie doctrine. Mr. Justice Black, writing for himself and four colleagues, stated that "[t]he harsh rule of the common law [that recovery is barred by contributory negligence] is completely incompatible with modern admiralty policy and practice." He therefore agreed that the established "admiralty doctrine" of comparative negligence should be invoked. As to Erie, the basic principle, according to the Justice, was that plaintiff's rights should not be varied by his choice of forum. 346 U.S. at 410-411, 74 S.Ct. 202.
 
 
 8
 On the other hand, in Wilburn Boat Justice Black, speaking this time for six members of the Court, held that the problem of a breach of warranty in a maritime insurance policy was not the subject of an established federal maritime rule. Rather than delve into the "number of * * * possible rules from which this Court could fashion one for admiralty," 348 U.S. at 320, 75 S.Ct. at 374 the Court remanded the case for application of the "appropriate state law."
 
 
 9
 Here too the appellant has been unable to direct us to any admiralty principle or maritime rule which could aid the court in determining the legality of her marital relationship. She merely points to the law of those states, other than Virginia, which recognize common-law marriages as a general family-law principle.[6] It would at best be illogical to disregard the state law which under accepted principles of conflicts of law would apply, merely because the law of some other place, unrelated to the parties and to the subject matter, happens to afford one in the appellant's position more favorable treatment.[7] If the court, in the absence of an admiralty rule or policy, is to look to some source other than the law of Virginia, we think that it would have to be the American common law;[8] but to say that would really not contribute to a practical solution here, since the "common law" has been variously interpreted by judicial decision.
 
 
 10
 If we inquire into the law of marriage and divorce under "the law of England as it existed at the time of the separation from the mother country," Seaboard Air Line Ry. v. Kenney, 240 U.S. 489, 494, 36 S.Ct. 458, 460, 60 L.Ed. 762 (1916), in an effort to discover a common law which might be applied, the result is no more favorable to appellant than the law of Virginia. According to Kent:
 
 
 11
 "No person can marry while the former husband or wife is living * * * [and] the principle of the common law, not only of England, but generally of the Christian world, is, that no length of time or absence, and nothing but death, or the decree of a court confessedly competent to the case, can dissolve the marriage tie." 2 Kent, Commentaries on American Law 79-80 (14th ed. 1896).
 
 
 12
 And Blackstone, discussing the effect of a prior subsisting marriage, says:
 
 
 13
 "The first of these legal disabilities is a prior marriage, or having another husband or wife living; in which case, besides the penalties consequent upon it as a felony, the second marriage is to all intents and purposes void * * *." 1 Blackstone, Commentaries 402 (Lewis ed. 1922).[9]
 
 
 14
 A marriage void because of an existing marriage may in certain circumstances have been converted into a common-law marriage after removal of the impediment,[10] but this could not occur if both parties knew of the existence of the impediment and failed to enter into a new marriage contract after the disability had been removed.[11] Thus, the common law, if we have been able to discover it with any precision, does not advance the appellant's cause. Further, if admiralty does indeed favor uniformity, this end is no better achieved in cases like ours by looking to a federal judge's interpretation of the common law than by relying upon the domestic relations laws of the states in which the parties are domiciled.
 
 
 15
 Because we can perceive no controlling maritime or clear-cut common-law rule, there is in fact no choice of law for an admiralty court to consider. The court must look to the Virginia law which normally governs the domestic relations of its domiciliaries. Adopting this view, the admiralty court in no way abdicates its responsibility in appropriate circumstances to formulate its own law.[12]
 
 
 16
 The Supreme Court has declared that "there is no federal law of domestic relations," De Sylva v. Ballentine, 351 U. S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1956), and the question is whether in the present circumstances admiralty should fashion a rule on the subject and, if so, from what sources shall the rule be drawn. In De Sylva v. Ballentine the Court was similarly faced with the choice of making an independent formulation or relying on existing state law to determine whether an illegitimate son of an author is entitled, as one of the "children" mentioned in the Copyright Act, 17 U.S.C.A. § 24, to succeed to the right of renewal. In deciding to follow state law, the Court said:
 
 
 17
 "We come, then, to the question of whether an illegitimate child is included within the term `children' as used in § 24. The scope of a federal right is, of course, a federal question, but that does not mean that its content is not to be determined by state, rather than federal law. Cf. Reconstruction Finance Corp. v. Beaver County, 328 U.S. 204, [66 S. Ct. 992, 90 L.Ed. 1172]; Board of County Commissioners [of Jackson County] v. United States, 308 U.S. 343, 351-352. This is especially true where a statute deals with a familial relationship; there is no federal law of domestic relations, which is primarily a matter of state concern." 351 U.S. at 580, 76 S.Ct. at 980.
 
 
 18
 Similar reasoning was employed in a Jones Act case, Beebe v. Moormack Gulf Lines, Inc., 59 F.2d 319 (5th Cir.), cert. denied, 287 U.S. 597, 53 S.Ct. 22, 77 L. Ed. 520 (1932), where reliance was upon Louisiana law in interpreting the term "widow" in the federal statute, and in the interpretation of other federal statutes as well.[13]
 
 
 19
 More directly pertinent than these analogous statutes is the Federal Employers' Liability Act itself, which the Jones Act incorporates. Repeatedly, questions involving domestic relations arising under that statute have been settled in accordance with state law. In Seaboard Air Line Ry. v. Kenney, 240 U.S. 489, 36 S.Ct. 458 (1916),[14] it was stated:
 
 
 20
 "There can now be no question that the act of Congress in so far as it deals with the subjects to which it relates is paramount and exclusive. It is therefore not disputable that recovery under the act can be had alone in the mode and by and for the persons or class of persons in whose favor the law creates and bestows a right of action. * * * But this is irrelevant, since the controversy concerns only the meaning of the act, which it is conceded, when rightly interpreted, is entitled to exclusive operation.
 
 
 21
 "Plainly the statute contains no definition of who are to constitute the next of kin to whom a right of recovery is granted. But as, speaking generally, under our dual system of government, who are next of kin is determined by the legislation of the various States to whose authority that subject is normally committed, it would seem to be clear that the absence of a definition in the act of Congress plainly indicates the purpose of Congress to leave the determination of that question to the state law." 240 U.S. at 493-494, 36 S.Ct. at 459-460.[15]
 
 
 22
 None of the cases cited by appellant refutes the essential holding of the Kenney case. In Middleton v. Luckenbach S.S. Co., 70 F.2d 326 (2d Cir.), cert. denied, 293 U.S. 577, 55 S.Ct. 89, 79 L.Ed. 674 (1934), the court could not logically apply any state law to interpret the Death on the High Seas Act, 46 U.S.C.A. §§ 761-768 (1958), because the persons involved were subjects of the British West Indies, the lawsuit arose from a ship collision in the Caribbean, and the forum had no "substantial contact" with the transaction. Kenney was distinguished as arising under a separate statute, the FELA, which specifically provided for concurrent federal and state jurisdiction, a distinction which is inapplicable in the present case since the Jones Act incorporates FELA on the matter of beneficiaries.[16] The court concluded that, as a matter of general law, "the rule that a bastard is nullius filius applies only in cases of inheritance" and, because the statutory test of dependency was met, the illegitimate had standing. Nor is Thompson v. Lawson, 347 U.S. 334, 74 S.Ct. 555, 98 L.Ed. 733 (1954), a case arising under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 902(16), controlling. There also the Court found reference to state law unnecessary because whether the claiming widow could recover turned on the question of her dependency.[17] Similarly, Gibson v. Hughes, 192 F.Supp. 564 (S.D.N.Y.1961), is not in point for it concerns a problem of conflict of laws, in a different context.[18] The opinion as a whole, we think, is much more persuasive against the appellant's contention than for it.
 
 
 23
 There is a certain appeal in the argument of the appellant that if she was actually dependent upon the deceased seaman she should be entitled to recover, especially as there is no other woman claiming as a widow. But the statute does not spread its benefits broadly according to dependency.[19] Relationship is an essential factor under the statute, which speaks of a "surviving widow." Neither express language in the statute nor the term "widow" in its ordinary use qualifies the survivor of a bigamous marriage as a widow. If the statute made only pecuniary loss the test rather than relationship, we would have a different case. In dealing with the rights of illegitimate children, as we have seen in De Sylva and Middleton, discussed above, we find, both under certain state and federal laws, a social attitude more favorable than in early English common law; but neither Virginia law nor any federal statute has recognized a right of recovery in a person in the position of this appellant.
 
 
 24
 Whether it would be sounder social policy to relax the statutory requirement of widowhood by treating the survivor of a bigamous marriage as a widow entitled to recovery is a fairly debatable question. But should such a change in policy be made on judicial initiative? It is one thing for admiralty to fill in the lacunae left by congressional silence; it would be quite another to rewrite the statute. It seems to us that an admiralty court would overstep proper limits if it should attain the result by giving a forced and artificial definition to the well-established term "widow." This would be the case were we to recognize as a wife a woman who goes through a marriage ceremony with a man knowing that he has an undivorced wife in being.
 
 
 25
 While it is true that in the present instance no other woman is competing with the appellant for a share in the settlement fund, a decision according the appellant standing could operate to the detriment of claimants such as parents or next of kin in future cases.
 
 
 26
 Emphatically we must decline to accept the appellant's contention that by applying the law of Virginia to interpret the term "surviving widow" in the Jones Act, a federal right is being defeated by the state. There can be no federal right unless the claimant can qualify as a beneficiary under the statute. Under the circumstances this can only be achieved through a lawful marriage as that term is interpreted in the only available domestic relations law — the law of the domicile.
 
 
 27
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 The Federal Employers' Liability Act, 45 U.S.C.A. § 51 (1958), renders a carrier liable to the decedent's "personal representative, for the benefit of the surviving widow * * *" and other listed beneficiaries. This provision has been specifically incorporated into the Jones Act, Merchant Marine Act, 46 U.S.C.A. § 688 (1958). See, e. g., Norris, The Law of Seamen §§ 668, 669 (2d ed. 1962); Gilmore & Black, The Law of Admiralty § 6-29 (1957)
 
 
 [2]
 The parties are in accord that, if state law is applicable, the appropriate law is that of Virginia and that under it the appellant's claim of a common-law marriage is without substance
 
 
 [3]
 The District Court was asked alternatively to treat the appellant as the decedent's "putative widow." This the court declined to do because it found on the evidence adduced that she knew of the prior existing marriage when she married the decedent and was thus disqualified from such treatment. No issue is pressed on this appeal that Mrs. Mary Virginia Bell is the putative widow
 
 
 [4]
 1A Moore, Federal Practice § 0.322 [2] (1961); Currie, "Federalism and the Admiralty: `The Devil's Own Mess,'" 1960 S.Ct.Rev. 158; Stevens, "Erie R. R. v. Tompkins and the Uniform General Maritime Law." 64 Harv.L.Rev. 246 (1950)
 
 
 [5]
 See also Hess v. United States, 361 U.S. 314, 80 S.Ct. 341, 4 L.Ed.2d 305 (1960); Levinson v. Deupree, 345 U.S. 648, 73 S. Ct. 914, 97 L.Ed. 1319 (1953); Isbrandtsen Co. v. Johnson, 343 U.S. 779, 72 S.Ct. 1011, 96 L.Ed. 1294 (1952); Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942); Just v. Chambers, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903 (1941)
 Cf. Baer, Admiralty Law of the Supreme Court 141-49 (1963).
 
 
 [6]
 The appellant states in her brief that common-law marriages are recognized if entered into today in the following states: Alabama, Alaska, Colorado, Connecticut, Florida, Georgia, Idaho, Iowa, Kansas, Kentucky, Montana, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas and District of Columbia. They are also recognized in the following if entered into before a specified date: California, Indiana, Michigan, Minnesota, Missouri, Mississippi, New Jersey, New York
 
 
 [7]
 For example, in the District of Columbia it has been suggested that a woman in the position of Mrs. Bell would be a valid common-law widow. Thomas v. Murphy, 71 App.D.C. 69, 107 F.2d 268, 269 (1939)
 
 
 [8]
 Ours is not the typical "federal common law" case represented by Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), and Bank of America Nat. Trust & Sav. Ass'n v. Parnell, 352 U.S. 29, 77 S.Ct. 119, 1 L.Ed.2d 93 (1956), nor has there been any argument that the court should treat it as such. Cf. Friendly, "In Praise of Erie — and of the New Federal Common Law," 19 Record of the Association of the Bar of the City of New York 64 (1964)
 
 
 [9]
 See, e. g., Hantz v. Sealy, 6 Bin. (Pa.) 405, 408 (1807); 1 Bishop, On Marriage, Divorce, and Separation 310-13 (1891); Barry, "Till Death Us Do Part," 17 Va. L.Rev. 415, 429 (1930)
 
 
 [10]
 Keezer, Marriage and Divorce 276-79 (3d ed. 1946); see, e. g., Fenton v. Reed, 4 Johns. (N.Y.) 52 (1809). Cf. Tetterton v. Arctic Tankers, Inc., 116 F.Supp. 429, 432 (E.D.Pa.1953)
 
 
 [11]
 Note, 21 Va.L.Rev. 331 (1934); Koegel, Common Law Marriage 153-60 (1922)
 
 
 [12]
 We are fully advertent to the statement of Mr. Justice Frankfurter in Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941 (1960) (dissenting opinion): "No area of federal law is judge-made at its source to such an extent as is the law of admiralty." Nor do we overlook the even more recent comment of Mr. Justice Black for the Court that "Article III of the Constitution vested in the federal courts jurisdiction over admiralty and maritime cases, and, since that time, the Congress has largely left to this Court the responsibility for fashioning the controlling rules of admiralty law." Fitzgerald v. United States Lines Co., Inc., 374 U.S. 16, 20, 83 S.Ct. 1646, 1650, 10 L.Ed.2d 720 (1963)
 
 
 [13]
 Some of these statutes are listed in a footnote in Lawson v. United States, 192 F.2d 479, 481 n. 5 (2d Cir. 1951), cert. denied, 343 U.S. 904, 72 S.Ct. 635, 96 L.Ed. 1323 (1952). To this list should be added the Railroad Retirement Act, 45 U.S.C.A. § 228e(b), Gloss v. Railroad Retirement Bd., 114 U.S.App.D.C. 177, 313 F.2d 568 (1962) (interpreting the statutory term "remarriage"); the World War Veterans' Act, 38 U.S.C.A. § 445, Live Stock Nat. Bank of Chicago v. United States, 106 F.2d 240 (7th Cir. 1939) (involving validity of common-law marriage); the Social Security Act, 42 U.S. C.A. § 402(e), Yeager v. Flemming, 282 F.2d 779 (5th Cir. 1960) (marital status of claimant upon annulment of "remarriage"); and the Internal Revenue laws, Helvering v. Fuller, 310 U.S. 69, 60 S.Ct. 784, 84 L.Ed. 1082 (1940) (status of parties and their property after a divorce)
 
 
 [14]
 The appellant has argued that this case is not controlling because it was decided four years before the enactment of the Jones Act. We think the opposite is true. Congress specifically said that beneficiaries of that Act were to be determined by reference to "all statutes of the United States conferring or regulating the right of action for death in the case of railway employees." 46 U.S.C.A. § 688
 
 
 [15]
 E. g., Poff v. Pennsylvania R. Co., 327 U.S. 399, 401, 66 S.Ct. 603, 90 L.Ed. 749 (1946); Pacheco v. New York, N. H. & H. R. Co., 15 F. 467, 469 (2d Cir. 1926); Padgett v. Padgett, 88 F.Supp. 630, 632 (S.D.Fla.1950); Hammond v. Pennsylvania R. Co., 54 N.J.Super. 149, 148 A. 2d 515 (1959)
 We think that Dice v. Akron, C. & Y. R. Co., 342 U.S. 359, 72 S.Ct. 312, 96 L.Ed. 398 (1952), cited by appellant, does not impair this authority. There the Court declined to follow state law on fraud in the obtention of a release from an FELA claim, a subject not as clearly committed to local law as domestic relations. Moreover, the Court was able to look to an established federal rule.
 See also Tune v. L. & N. R. Co., 223 F. Supp. 928 (M.D.Tenn.1963), where the court indicated, without deciding, that the meaning of the term "children" as used in the FELA is determined by state law. It held that under either state or federal law an illegitimate child was within the statutory category.
 
 
 [16]
 The Jones Act and the Death on the High Seas Act differ as to geographic coverage and the survival of personal injury actions, and also, important to the present case, as to beneficiaries entitled to recover. The FELA (Jones Act) contains mutually exclusive classes of beneficiaries, while the DHSA does not. Day, "Maritime Recovery," 64 Col.L.Rev. 648, 653 (1964)
 
 
 [17]
 Determination of the "surviving wife" under that Act is a matter of state law "since marital status is ordinarily determined by local law * * *." Albina Engine and Mach. Works v. O'Leary, 328 F.2d 877 (9th Cir. 1964). Under very similar circumstances, Idaho law, which was there applicable, was found to be more favorable to plaintiff than the law of Virginia in this case
 
 
 [18]
 "The problem," said the court, "is to determine whether the law governing the marital status of the plaintiff is that of New York, of the District of Columbia, or of French Morocco (the law of France)." 192 F.Supp. at 566
 
 
 [19]
 "The Jones Act * * * explicitly name[s] the widow as beneficiary without reference to her dependency on the deceased. * * *" Civil v. Waterman S. S. Corp., 217 F.2d 94, 99 (2d Cir. 1954) (dictum). FELA § 51, 45 U.S.C.A. § 51 (1958), provides that only dependent "next-of-kin" shall benefit. The other designated beneficiaries need not prove dependency. See Gilmore & Black, Law of Admiralty 307 (1957). In fact, nondependent relatives may recover at the expense of a dependent relative listed in a subsequent class. Whitaker v. Blidberg-Rothchild Co., 195 F.Supp. 420 (E.D. Va.), aff'd 296 F.2d 554 (4th Cir. 1961) (nondependent daughter prevented dependent mother from recovering under the Jones Act); The Four Sisters, 75 F. Supp. 399 (D.Mass.1947) (dependent father precluded recovery for dependent sister)