**HOLLAND AMERICA INSURANCE COMPANY, and Triple A Machine Shop, Petitioners,**

v.

**William K. ROGERS, Deputy Commissioner, Thirteenth Compensation District, United States of America, Department of Labor, Bureau of Employees' Compensation, Respondents.**

**Angela HARPER, aka Angela Spies, Real-Party in Interest.**

No. 69–569.

United States District Court,
N. D. California.

May 28, 1970.

See also, D.C., 308 F.Supp. 1031.

N. A. Misciagna, Kiernan & Misciagna, San Francisco, Cal., for petitioners.

James L. Browning, Jr., U. S. Atty., John F. Meadows, Atty. in Charge, West Coast Office, Admiralty & Shipping Section, Allan J. Weiss, Atty., Admiralty & Shipping Department, U. S. Dept. of Justice, San Francisco, Cal., for Deputy Commissioner William K. Rogers.

Nicholas Zoller, San Francisco, Cal., for real party in interest.

Order Granting Real Party in Interest's Motion for Summary Judgment and Denying Petitioners' Motion for Summary Judgment

GERALD S. LEVIN, District Judge.

### I. *Statement of the Case*

This matter comes before the Court on cross-motions for summary judgment, by which motions the Petitioners seek to set aside a compensation order entered by the Respondent Deputy Commissioner pursuant to provisions of the Longshoremen's and Harbor Workers' Compensation Act ["the Act"], as amended 33 U.S.C. § 901 et seq., and the Respondent and Real Party in Interest ["Angela Spies"] seek to have the compensation order affirmed.

The compensation order was entered on December 4, 1969, awarding Angela Spies death benefits as the "surviving wife" of a deceased employee pursuant to 33 U.S.C. § 909.[1]

I.    COMPENSATION ORDER
AWARD OF DEATH BENEFITS
Case No. 13–10734

Such investigation in respect to the above entitled claim having been made as is considered necessary, and a hearing having been duly held in conformity with law, the Deputy Commissioner makes the following:

FINDINGS OF FACT

1. That on the tenth day of March, 1969, the deceased employee above-named was in the employ of the employer above-named at San Francisco in the State of California, in the Thirteenth Compensation District, established under the provisions of the Longshoremen's and Harbor Workers' Compensation Act, and that the liability of the employer for compensation under said Act was insured by the Holland America Insurance Company;

2. That on said day, the deceased employee while performing services for the employer on the S. S. Robin Locksley, then afloat on the navigable waters of the United States at San Francisco, California, sustained a fatal injury causing his death on the same day; that the injury and resultant death arose out of and in the course of the employment;

3. That written notice of the fatal injury was not given to the employer within thirty days, but that the employer had knowledge of the injury and death and has not been prejudiced by the lack of such written notice;

4. That the average weekly wage of the deceased employee at the time of the injury was equivalent to $105 a week;

5. That the deceased employee's funeral and burial expenses amount to $1,430.37, none of which has been paid; that the employer and insurance carrier are liable for payment of $400 for the deceased employee's reasonable funeral expenses; that such sum is due and owing to San Francisco Funeral Service, One Church Street, San Francisco, California;

6. That the claimant, Angela Spies, born on February 20, 1913, and the deceased employee were married on January 6, 1967, in Washoe County, State of Nevada, and lived as man and wife to the time of the death of the said employee, and within the meaning of the term in the said Act, is the surviving wife of the deceased employee and as such is entitled to death benefits at the rate of $36.75 a week, (35-percent of $105), beginning on March 10, 1969; that the accrued death benefits due the surviving wife from March 10, 1969, to September 16, 1969, inclusive, (date of hearing), 27²⁷⁄₇ weeks, amount to $1,002.75;

7. That the employer and insurance carrier have paid nothing as death benefits.

## II. *Facts*

Angela Spies filed for death benefits under the Act as the "surviving wife" of a deceased employee whose employment comes within the coverage of the Act. The parties do not dispute the fact that the accident and injury by which the decedent, Julian Spies, lost his life arose out of the course of his employment, nor do they dispute the fact that at the time of injury the decedent's average weekly wage was equivalent to $105.00 per week. Hence, if Angela Spies is the "surviving wife" of Julian Spies within the meaning of the Act, she is entitled to the death benefits which she has been awarded by the Deputy Commissioner.

Angela Spies, a woman of Mexican descent with little formal education, was first married to one Charles Herrera in 1933, and was legally divorced from Herrera by a Texas final decree of divorce in 1937. In 1941, Angela Spies married one Homer Doyle Harper, and in 1957, while both resided in Watsonville, California, Harper employed a Mexican attorney in Chihuahua, Mexico, to obtain a divorce for him. Angela Spies was then given divorce papers by Harper to be executed in Watsonville, whereby she appointed a Mexican lawyer to represent her. Harper obtained the Mexican decree of divorce on September 11, 1957, and served Angela Spies with a copy of said decree.

On January 6, 1967, Angela Spies married the decedent, Julian Spies. At the time of their marriage Angela Spies informed Julian Spies of her Mexican divorce from Harper. Angela Spies lived with Julian Spies as man and wife from the date of their marriage until his death on March 10, 1969. Angela Spies was named the sole beneficiary in Julian Spies's will which was admitted to probate in Marin County, California, on April 14, 1969.

After a hearing before the Deputy Commissioner, Angela Spies was found to be the "surviving wife" of the decedent and therefore entitled to death benefits under the Act.

The question presented here for review stems from the contention of petitioners that since Angela Spies' 1957 Mexican divorce from Harper was invalid, and that since Harper is still living, Angela Spies remains the lawful wife of Harper and thus cannot be the "surviving wife" of Julian Spies within the meaning of the Act.

## III. *Question Presented*

The sole question presented in this proceeding is: Whether the record, considered as a whole, supports the Deputy Commissioner's findings that Angela

---

Upon the foregoing findings of fact the Deputy Commissioner makes the following:

### AWARD

That the employer, Tripple A Machine Shop, Inc., and the insurance carrier, Holland America Insurance Company, shall pay death benefits as follows:

To Angela Spies, 27⅔ weeks at $36.75 a week, from March 10, 1969, to September 16, 1969, inclusive, in the amount of $1,002.75, which is to be paid forthwith, and shall continue payments of death benefits from September 17, 1969, at $36.75 a week in biweekly installments, subject to the limitations of the Act, or until further order of the Deputy Commissioner;

To San Francisco Funeral Service, One Church Street, San Francisco, California, the sum of $400 as reasonable funeral expenses of the deceased employee.

A fee in the sum of $1,000 for professional services rendered in the presentation of the claim is hereby approved in favor of Attorney Nicholas Zoller, 68 Post Street, San Francisco, California, which is a lien upon and deducted from the award to Angela Spiez [sic].

If payment is not made within 10 days of the dates specified in this order, additional compensation for delay shall be paid at the rate of 20-percent in accordance with Section 14(f) of the Act, U.S.C. 914(f). If default in payment continues over 30 days, application should be made to the Deputy Commissioner within one year after such default for a supplementary order for enforcement of this award by the federal court in accordance with Section 18(a) of the Act, 33 U.S.C. § 918(a).

\*     \*     \*     \*     \*

Spies is the "surviving wife" of the decedent within the meaning of the Act.

## IV. *Discussion*

■ The scope of review here is delineated by the Administrative Procedure Act and can be summarized as follows: the findings of the Deputy Commissioner are to be accepted unless they are unsupported by substantial evidence on the record considered as a whole. O'Leary v. Brown-Pacific-Maxon, 340 U.S. 504, 508, 71 S.Ct. 470, 95 L.Ed. 483 (1951); Hastorf-Nettles, Inc. v. Pillsbury, 203 F.2d 641, 643 (9th Cir. 1953); Peerless Insurance Company v. Hill, 309 F.Supp. 189, 191 (D.Minn.1969). The burden is on the petitioner(s) to show that the evidence does not support the compensation order of the Deputy Commissioner. Perini Corporation v. Heyde, 306 F.Supp. 1321, 1325 (D.R.I.1969).

■ The Act provides for the recovery of death benefits by the "surviving wife" of an insured decedent, pursuant to 33 U.S.C. § 909. The term "surviving wife" is not defined in the Act, although 33 U.S.C. § 902 (Definitions) does list the following definition:

\* \* \* \* \* \*

(16) The term "widow" includes only the decedent's wife living with or dependent for support upon him at the time of his death; or living apart for justifiable cause or by reason of his desertion at such time.

\* \* \* \* \* \*

However viewed, Angela Spies must qualify as a "surviving wife" or "widow" in order to be entitled to death benefits under the Act. The Deputy Commissioner found Angela Spies to be the "surviving wife" of Julian Spies and, under the standard of review noted above, this Court cannot say that such finding is unsupported by substantial evidence on the record viewed as a whole.

■ Although Petitioners raised some question before the Deputy Commissioner as to the validity of Angela Spies's 1957 Mexican divorce, the Deputy Commissioner was entitled to reject the inconclusive evidence offered thereon by Petitioners and presume that Angela Spies's subsequent marriage to Julian Spies was valid. When a marriage is shown in evidence, whether regular or irregular, and whatever the form of proof, the law raises a strong presumption of its legality. Freeman S.S. Co. v. Pillsbury, 172 F.2d 321, 323–324 (9th Cir. 1949). Similarly, the presumption of validity of a first marriage is displaced by the presumption of validity of a second marriage where such occurs. United States v. Marlow, 235 F.2d 366, 368 (5th Cir. 1956); Estate of Vinson, 212 Cal.App.2d 543, 546, 28 Cal.Rptr. 94 (1963); Estate of Shank, 154 Cal.App. 2d 808, 812, 316 P.2d 710 (1957).

Accordingly, this Court finds that Angela Spies was the lawful wife of Julian Spies at the time of his death, and is therefore entitled to death benefits under the Act as his "surviving wife."

Even were this Court to conclude otherwise and find that the 1957 Mexican divorce in question were invalid, Angela Spies would nonetheless be entitled to the recovery of death benefits in the instant case if she were to qualify as a "putative spouse" under the laws of California. The "putative spouse" issue raises two problems, each of which is discussed following.

### A. Can a Putative Spouse Recover as a "Surviving Wife" under the Act?

■ It appears to be the generally accepted rule that a party whose marriage is otherwise recognized by the state where the injury occurs, can be a "surviving wife" within the meaning of the Act, even if the party is not actually married at the time. (As e. g., where the spouses have entered into a nonceremonial common-law marriage recognized by the state.) *See* Bolin v. Marshall, 76 F.2d 668, 669 (9th Cir. 1935); Green v. Crowell, 69 F.2d 762, 764 (5th Cir. 1934); Keyway Stevedoring Co. v. Clark, 43 F.2d 983, 984–985 (D.Md.1930).

In Lawson v. United States, 192 F.2d 479, 481 (2d Cir. 1951), cert. den. 343 U.S. 904, 72 S.Ct. 635, 96 L.Ed. 1323 (1952), Judge Swan writing for the court denied death benefits to a claimant "wife" under the Death on the High Seas Act where there were two women claiming as wives of the decedent. Judge Swan noted that in most federal acts, the word "wife" means legal wife. That case is not apposite here, however, because it dealt with two rival claimants and with a different federal enactment. Lawson was distinguished in Gibson v. Hughes, 192 F.Supp. 564, 569–570 (S.D. N.Y.1961), a proceeding under the instant Act, where the court summarized the Lawson case as holding "that Congress had not intended 'that a man could have two or more wives all recovering at once under this statute'". Id. at 569.

The court in Gibson concluded that since there was before it no question of multiple recovery, the rationale of Lawson was inapplicable. The approach taken in Gibson appears proper in view of the purposes of the workmen's compensation statutes, and it does not appear that any court since Lawson or Gibson has applied the reasoning or holding of Lawson to proceedings under the instant Act. Accordingly, we find that a putative spouse can be a "surviving wife" under the Act.

B. Is Angela Spies a Putative Spouse within the Meaning of Applicable California Law?

Assuming that a putative spouse may qualify for death benefits under the Act, a second and more difficult problem presents itself: is Angela Spies such a putative spouse?

■ Because there is no purely federal law of domestic relations, Gibson, supra at 566, the Act leaves the definitions of "surviving wife" and "widow" to the law of that state where the injury complained of occurred. Albina Engine and Machine Works v. O'Leary, 328 F.2d 877, 878 (9th Cir. 1964), cert. den. 379 U.S. 817, 85 S.Ct. 35, 13 L.Ed.2d 29 (1964); Keyway Stevedoring Co., supra, 43 F.2d at 984–985. Therefore, it is also state law—in the instant case that of California—which is determinative of a claimant's status as a putative spouse.

California case law defines a putative spouse as:

[O]ne who believes in good faith that she is a party to a valid marriage though the marriage is invalid. [Citations omitted.] Brennfleck v. Workmen's Comp. App. Bd., 265 Cal.App.2d 738, 743, 71 Cal.Rptr. 525 (1968). ["Brennfleck I".] [2]

■ The essential ingredient of the putative spouse doctrine in California is, then, "good faith." MacArthur v. Industrial Acc. Com., 220 Cal. 142, 146, 29 P.2d 846 (1934); Temescal Rock Co. v. Industrial Acc. Com., 180 Cal. 637, 640–641, 182 P. 447 (1919); Brown v. Brown, 274 A.C.A. 203, 211, 82 Cal.Rptr. 238 (1969); DeFreece v. Industrial Acc. Com., 26 Cal.App.2d 584, 587–588, 80 P.2d 129 (1938); 55 C.J.S. Marriage § 35 at 877–879; 2 Witkin, Summary of California Law, Workmen's Compensation § 97 at 1736 (7th ed. 1960). Furthermore, it is clear that the claimant putative spouse has the presumption of good faith in such a situation. Brown v. Brown, supra, 274 A.C.A. at 211, 79 Cal.Rptr. 257; Brennfleck I, supra 265 Cal.App.2d at 745, 71 Cal.Rptr. 525.

■ In the instant case all the evidence points to the conclusion that Angela Spies married and lived with Julian Spies in the honest belief that such marriage was valid and that she was in fact divorced from Homer Doyle Harper. At the hearing before the Deputy Commissioner, Angela Spies testified that she had told Julian Spies about her divorce from Harper prior to marrying Julian Spies. Angela Spies further testified

2. This was the first Brennfleck case. On a subsequent hearing Brennfleck II was decided, as discussed hereinafter in the text.

that when she received the Mexican divorce papers in question she "knew they were the final divorce. That's all I was interested in at the time." There was no other testimony or evidence before the Deputy Commissioner which would give any indication that Angela Spies' intention and belief were other than what she stated them to be as respects her belief in the validity of her marriage to Julian Spies.

Petitioners argue that the status of puntative spouse is unavailable to Angela Spies because she was a party to the procurement of the Mexican divorce and is therefore not "innocent" within the meaning of those cases which permit a putative spouse to enjoy some or all of the incidents of a valid marriage. Petitioners have cited no cases supporting this position, and it does not recommend itself to this Court in view of the purposes of the workmen's compensation acts, including the Act under consideration here.

In proceedings under its own workmen's compensation acts, California has recognized the salutary purpose to be served by permitting a putative spouse to recover benefits thereunder. In fact, the greater number of California cases above cited which deal with the putative spouse problem do so in the context of the claimed award of workmen's compensation benefits. *See* 2 Witkin, *supra;* Note, "Effect of State Marital Laws on "Widow's" Benefits under the Social Security Act," 1 San Diego L.Rev. 76 *passim* (1964). As one California court concluded, in Schotte v. Schotte, 203 Cal.App.2d 28, 33, 21 Cal.Rptr. 220, 224 (1962),

> In many instances, in order to effect equity and justice the law disregards the difference between a valid and an invalid or void marriage. [Citations omitted.]

California's policy was well expressed in the recent case of Brennfleck v. Workmen's Comp. App. Bd., 3 Cal.App.3d 666, 84 Cal.Rptr. 50 (1970) [*Brennfleck* II.] The question there presented was whether a putative wife can be a "surviving widow" within the meaning of Section 4702 of the California Labor Code.

Portions of the discussion of the court in *Brennfleck* II are worth repeating here at some length:

> The theory of the compensation act as to death cases is that the dependents of the employee killed through some hazard of his employment shall be compensated for the loss of the support they were receiving from him at the time of his death. [Citations omitted.] *Id.* at 671–672, 84 Cal.Rptr. at 53.

> \* \* \* \* \* \*

> Logically, there does not seem to be any good reason why a putative spouse who believes that she is married and who lives with the putative husband, taking care of his household and him just as a legal wife would do, should not receive the same death benefits as a legal wife would. There is a fundamental unfairness in treating such a putative wife who has reason to believe and in good faith believes that she is the workman's wife, as does he, differently from a legal wife. *Id.* at 672, 84 Cal.Rptr. at 53.

> \* \* \* \* \* \*

> There are three logical reasons why a putative spouse is to be considered a "surviving widow" within the section 4702 definition. They are: workmen's compensation laws should be likened to the comparable sections on intestate succession; the Legislature should not be presumed to intend an unjust result not necessitated by the section's language; and we consider the relative infrequency of conflict between a putative spouse and a legal spouse and the simple disposition by division within the framework of the workmen's compensation statutes. *Id.* 53.

These California cases just cited state the law of California on the issue of a putative spouse, and, as indicated, this law must be followed in determining

**320**

whether Angela Spies is entitled to benefits under the Act. In *Albina Engine and Machine Works, supra,* a proceeding under the Act, the question before the court was whether the claimant was a "surviving wife" of a deceased employee. The court stated that,

> When the state law does provide a definition of marital status deliberately shaped to compensation act purposes alone, there is no reason why that definition should not be applied under the federal statute in preference to one drawn from the state's general domestic relations law. *Id.* 328 F.2d at 879.

 The *Albina* case reiterates the accepted approach to dealing with problems of marital relations: that marriage is not a monolithic institution, but consists instead of separate and severable incidents. Thus where the policy of a state may preclude its courts from "recognizing", say, a marriage of one man to two women, it may be permissible for both women to recover property from his estate on his death as his "wives", for recognizing a marriage for the purposes of the one incident would not violate the state's public policy as might recognition of it for other purposes. Similarly, in the instant case, this Court need not "recognize" the marriage of Angela Spies to Julian Spies in order to find that she is nonetheless entitled to at least some of the incidents of marriage, including the right to collect death benefits under a federal workmen's compensation law upon his death.

The Act is, of course, to be liberally construed in the light of its remedial nature and humanitarian purpose. *See* Nalco Chemical Corporation v. Shea, 419 F.2d 572, 574 (5th Cir. 1969); Ruggiero v. Rederiet for M/S Marion, 308 F.Supp. 798, 802 (S.D.N.Y.1970); *Gibson, supra,* 192 F.Supp. at 571. No reasonable objection presents itself to this Court as to why, on policy grounds, death benefits should be denied to claimants situated such as Angela Spies. The Court does not envision the consumma-

tion of untold illicit relationships and marriages in the hope of one spouse dying and the other's recovering death benefits under workmen's compensation acts, nor would a contrary conclusion in the instant case result in any fewer putative relationships or a general upgrading of public morals. In a word, both fairness and the policy expressed in the workmen's compensation statutes are served by finding that Angela Spies is entitled to death benefits under the Act, whether as the actual "surviving wife" or the putative "surviving wife" of Julian Spies.

Accordingly, Petitioners' Motion for Summary Judgment is denied and Real Party in Interest's Motion for Summary Judgment is granted, judgment to be entered in accordance herewith.

It is so ordered.